550 So.2d 1225 (1989)
Rachel Torres Wife of/and Joseph RUNNELS
v.
August J ESTEVES and State Farm Mutual Automobile Insurance Co.
No. 88-CA-0320.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 1989.
Rehearing Denied November 15, 1989.
Frederick J. Gisevius, Jr., Patrick H. Hufft, Dennis Rousseau, Frederick J. Gisevius, Jr., New Orleans, for plaintiffs-appellees and plaintiffs-appellants.
C. Gordon Johnson, Jr., William A. Porteous, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-appellee.
Anthony J. Clesi, Jr., Ward & Clesi, New Orleans, for defendants-appellants.
*1226 Before GARRISON, PLOTKIN and BECKER, JJ.
GARRISON, Judge.
This suit involves a vehicular collision which occurred on February 28, 1984 at approximately 7:30 a.m. on Louisiana Highway 39 in St. Bernard Parish. Plaintiff, Rachel Runnels, was driving in a westerly direction on Louisiana Highway 39 and was stopped due to traffic congestion when her car was struck from behind by a car driven by the defendant, August Esteves. Mrs. Runnels and her husband, Joseph Runnels, filed suit for damages resulting from this accident against Esteves and State Farm Mutual Automobile Insurance Company. State Farm was sued in a dual capacity as the liability insurer of Esteves and as the Runnels' uninsured/underinsured motorist insurer. This lawsuit alleged that the defendant Esteves' negligence was the proximate cause of the accident and Mrs. Runnels' resulting injuries.
Following trial, the trial judge rendered judgment in favor of the plaintiffs and against Esteves for $557,452.76 and against State Farm for $35,000.00 plus all costs and judicial interest. The amount awarded against State Farm included $10,000.00 for liability coverage of Esteves and $25,000.00 for underinsured motorist coverage of the Runnels. The total amount awarded to plaintiffs, $592,452.76, was itemized by the trial judge as follows:

1. Dr. Llewellyn, M.D. $ 10,315.00
2. Fortenberry and Hurwitz,
 M.D. 1,861.00
3. St. Bernard Physical Therapy 360.00
4. Mario A. Sanchez, M.D. 300.00
5. Kern Chiropractic 2,144.00
6. New Orleans East Orthopedic 865.00
7. Pendleton Memorial Hospital 22,631.76
8. Anesthesia East, Inc. 882.00
9. Chalmette General Hospital 94.00
10. Future Medicals 20,000.00
11. Lost Wages 28,000.00
12. Future Lost Wages 160,000.00
13. Pain and Suffering 300,000.00
14. Loss of consortium 45,000.00
 ___________
 TOTAL $592,452.76

Defendant Esteves now appeals the trial court judgment. The plaintiffs appeal from the trial court judgment's failure to award legal interest against State Farm on the entire amount of the judgment instead of only on the limits of the policies.
On appeal, defendant Esteves assigns two specifications of error. In the first specification of error, Esteves argues that the trial court erred in holding that State Farm only owes interest on the limits of the insurance policies rather than on the entire amount awarded to plaintiffs. Specifically, Esteves' argument is based on the fact that the State Farm liability policy insuring him states that State Farm would be liable for "interest on all damages owed by an insured as a result of judgment." This specification of error is the same as that assigned by plaintiffs in their appeal brief.
In the trial court judgment, the trial judge specified that judicial interest, as assessed against State Farm, was to be computed upon the limits of Esteves' liability policy and the Runnels' uninsured/underinsured motorist policy from the date of judicial demand until the date of State Farm's tender of the policies' limits to plaintiffs. The pertinent portions of Esteves automobile liability policy state as follows:
"In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident ...
2. Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage."
State Farm argues that the trial judge correctly assessed interest against it by holding that State Farm owed interest on its policy limits from the date of judicial demand until the date of judgment and, thereafter, on the entire amount of the judgment until such time as it pays or tenders its limits together with applicable interest. However, a reading of the trial court judgment does not indicate that the trial judge made such a distinction. The judgment clearly states that judicial interest is to be computed on the limits of the two policies from the date of judicial demand until State Farm's tender of the policies' limits to plaintiff.
In Fowler v. Roberts, 526 So.2d 266 (La. App. 2nd Cir.1988), writ granted, 531 So.2d 257 (La.1988); writ denied 531 So.2d 278 *1227 (La.1988), the court interpreted the same State Farm Supplemental Payments Clause and determined that the clause required State Farm to pay interest on the entire judgment in favor of the plaintiff from the date of judicial demand until the date that State Farm paid the limits of its liability coverage. Accordingly, in this case, we amend the trial court judgment to provide that State Farm owes interest on the entire judgment in favor of the plaintiffs from the date of judicial demand until the date on which it paid the limits of its two policies to plaintiffs.
In defendant Esteves' second specification of error, he argues that the amount of damages awarded to plaintiffs was excessive. Esteves contends that Mrs. Runnels sought treatment from Dr. Llewellyn, a neurosurgeon, in bad faith for the purpose of creating high medical expenses and, therefore, the award for past medical expenses and pain and suffering should be reduced. He also argues that plaintiff failed to prove by a preponderance of the evidence that she is totally and permanently disabled, and that she can never hold a part-time minimum wage job, engage in conjugal relations or help with household chores and, therefore, the awards for loss of consortium and future lost wages should be reduced. Esteves also contends that the award for future medical expenses is highly speculative and should be reduced.
In considering whether the damages awarded in this case are excessive, we must determine if the award was a clear abuse of the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). As stated in Reck v. Stevens, supra:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive."
It should first be noted that plaintiffs/appellees correctly state in their brief that the defendant Esteves offered no evidence or testimony at trial to support his assertion made on appeal that Mrs. Runnels sought treatment by Dr. Llewellyn in a bad faith attempt to create high medical expenses. At the time of the accident, Mrs. Runnels was thirty-one years old. She was employed by a bank as a collateral analyst earning a salary of $1,200.00 per month. She is married and is the mother of two small children.
Immediately after the accident, Mrs. Runnels was taken by ambulance to Chalmette General Hospital emergency room. X-rays were taken of her neck and low back and the emergency room personnel recommended that she consult a specialist. She consulted Dr. Allain Cracco who prescribed muscle relaxers for her pain and numbness. Dr. Cracco advised Mrs. Runnels that surgery would be required if her condition did not improve. In an attempt to avoid surgery, Mrs. Runnels consulted a chiropractor approximately two weeks after the accident. After treatment from the chiropractor failed to provide her with any lasting relief from her back and neck pain, Mrs. Runnels consulted Dr. Rayborn Llewellyn, a neurosurgeon, in November, 1984.
Dr. Llewellyn examined Mrs. Runnels and made objective findings of muscle spasms affecting her major neck muscles. Dr. Llewellyn also found that Mrs. Runnels was experiencing limitation of neck movement and some decreased sensation in her left arm and hand. Because Dr. Llewellyn found that Mrs. Runnels had exhausted outpatient forms of therapy without improvement, he recommended that she be hospitalized for diagnostic tests including a discogram. Mrs. Runnels followed this recommendation and the tests confirmed, in Dr. Llewellyn's opinion, the presence of muscle ligament sprains with some residual effect in the neck area. Mrs. Runnels was instructed to apply heat to the painful areas, to do certain exercises and to participate in physical therapy.
After these activities provided no improvement in her condition, Mrs. Runnels returned to Dr. Llewellyn's office in January, 1985. Mrs. Runnels was hospitalized again and Dr. Llewellyn ordered additional *1228 tests, including another discogram, which indicated that the C-5/C-6 joint was not healing but, instead, was worsening as to the attached cartilage indicating the need for a diskectomy, i.e. the removal of the disc which was impinging the nerves to her left arm and hand. This surgery was performed on Mrs. Runnels by Dr. Llewellyn on February 7, 1985 and she was hospitalized for a total of eight days. After her hospitalization, Mrs. Runnels was prescribed medication and ordered to follow an exercise program. As of June, 1985, Mrs. Runnels was still experiencing pain in her arm and hand and Dr. Llewellyn's opinion, at that time, was that Mrs. Runnels was disabled.
In August, 1985, Mrs. Runnels was still experiencing problems with neuralgia, the decreased sensation and strength affecting her left arm and hand. She also had complaints regarding soreness and spasms in her back muscles and numbness and weakness in her left leg. She also had a painful lump in her left thigh. On Dr. Llewellyn's advice, Mrs. Runnels entered the hospital on August 26, 1985 for testing and treatment. Tests on Mrs. Runnels' lower back, including another discogram, revealed bulging of the L-3/L-4 disc and L-4/L-5 disc with disc protrusion. The tests also revealed that her neuralgia problem was continuing to heal and according to Dr. Llewellyn's testimony, the lump which was surgically removed from her left thigh was a muscle spasm which was caused by nerve entrapment or nerve irritation in the back area. However, a medical report in the exhibits stated that the excised lump was fat tissue. In any event, the lump was not a threat to Mrs. Runnels' health. Dr. Llewellyn changed Mrs. Runnels' rehabilitative programs in an attempt to heal the L-4/L-5 disc injury and to achieve better results from the cervical diskectomy.
Mrs. Runnels was hospitalized for the fourth time on January 6, 1986 for worsening back problems. Dr. Llewellyn performed a diskectomy to excise the torn portions of her L-4/L-5 disc. As of July, 1986, Mrs. Runnels visited Dr. Llewellyn and continued to complain of pain, limitation of motion and disability. At that visit, Dr. Llewellyn informed her that, in his opinion, she was disabled and probably would not improve to the point that she could be comfortably employed outside of the home. He also told her that she would have problems climbing, lifting, driving and standing for prolonged periods of time. Dr. Llewellyn advised Mrs. Runnels that it was possible that she would need future surgery, medical treatment and medication.
Dr. Llewellyn opined at trial that Mrs. Runnels has permanent injuries which are causally related to the trauma received in the February 28, 1984 automobile accident. He also stated that Mrs. Runnels has a 15% anatomical disability and 100% functional disability as to any type of work outside of the home.
Mrs. Runnels testified at trial that the pain of her injuries suffered in the accident made working at her bank job unbearable. She stated that she still suffers from lower back pain and has limited movement in her neck. She claimed that her pain precludes her from many activities in which she engaged prior to the accident including sports, household chores, and bathing her children. She stated that she has trouble sleeping and fears crowds and driving. Mrs. Runnels and her husband both testified that right after the accident, Mrs. Runnels pain and medication precluded them from having sexual relations and that, although their sex life eventually resumed, it was with diminished frequency because of her continued pain. Mr. Runnels testified that although they had an active social life prior to the accident, his wife's pain has caused them to stay home during most of their leisure time.
After careful review of the record in this case, we find that the award of damages to plaintiffs was neither excessive nor an abuse of the trial judge's discretion. Therefore, for the reasons stated above, we amend the trial court judgment to provide that State Farm owes judicial interest on the entire amount of the award from the date of judicial demand until the date of State Farm's tender of its policies' limits to *1229 plaintiffs. In all other respects, the trial court judgment is affirmed.
AMENDED AND AFFIRMED