656 So.2d 991 (1995)
Mary Jane Jeffreys MARTIN
v.
CHAMPION INSURANCE COMPANY, et al.
State Farm Mutual Automobile Insurance Company.
No. 95-C-0030.
Supreme Court of Louisiana.
June 30, 1995.
*993 Henry Gerard Terhoeve, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge; for applicant.
Rick A. Caballero, Donald Wayne Price, Due, Caballero, Price & Guidry, Baton Rouge; for respondent.
LOTTINGER, Justice Pro Tem.[1]

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Mary Jane Jeffreys Martin, was injured in an automobile accident. Prior to trial, plaintiff settled with the tortfeasor and its insurer, Champion Insurance Company (Champion), for the $10,000 policy limit, dismissing them from the suit. Plaintiff also accepted a $5,000 unconditional tender from her uninsured motorist (UM) carrier, State Farm Mutual Automobile Insurance Company. The matter proceeded to trial and a jury returned a verdict awarding plaintiff a total of $170,600 for the injuries which she sustained in the accident. The trial court accordingly rendered judgment in favor of plaintiff and against State Farm for $95,000 (the jury's verdict of $170,600 less a credit of $75,600, which credit represents the $10,000 settlement with the tortfeasor's insurer, the $5,000 tender from State Farm and $60,600, the amount by which the verdict exceeds State Farm's policy limits of $100,000.) The judgment further ordered State Farm to pay judicial interest on the entire amount of the verdict, $170,600, from date of judicial demand until the date of its unconditional tender and on $155,600[2] from the date of tender until paid.
State Farm did not appeal/dispute that it was liable for $95,000 in principal, nor that it was liable to pay interest on that amount from the date of judicial demand. State Farm did appeal the award of interest on amounts beyond the principal of $95,000.
On January 26, 1994, the court of appeal reversed the trial court in part, holding that State Farm was not liable for interest on any amount beyond the $95,000 it owed in principal. On rehearing, the court of appeal reversed itself and entered an opinion affirming the trial court. Martin v. Champion Insurance Company, 92-1557 (La.App. 1st Cir. 12/15/94); 649 So.2d 20.
State Farm filed for a writ of certiorari with this Court, contending that both the court of appeal and the trial court erred with respect to the award of legal interest. This court granted the writ on the relevant issues. Martin v. Champion Insurance, 95-0030 (La. 3/17/95); 651 So.2d 256.
(1) Is a UM carrier liable for legal interest on amounts in excess of its policy limits?
(2) Is a UM carrier liable for legal interest on amounts paid by the tortfeasor's insurer?
(3) Is a UM carrier liable for legal interest on amounts it unconditionally tendered to the plaintiff prior to trial?

I

A. APPLICATION OF LA.R.S. 22:1406
The primary dispute between the parties concerns whether State Farm is liable for interest on damages in excess of its UM *994 policy limits. The issue presented here is whether, in the absence of a valid written waiver, a supplemental payment provision contained in the liability portion of an automobile insurance policy applies to a UM claim.
The liability section of plaintiff's State Farm policy contains a supplemental payment provision which states in pertinent part:
In addition to the limits of liability, we will pay for an insured any costs listed below resulting from such accident.
. . . .
2. Interest on all damages owed by an insured as the result of a judgment until we pay, offer or deposit in court the amount due under this coverage.
La.R.S. 22:1406(D) requires that an insurance policy provide UM coverage "in not less than the limits of bodily injury liability provided by the policy ... however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or select lower limits." The purpose of this statute is to promote full recovery for innocent accident victims by making UM coverage available for their benefit. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). This statute mandates that, in the absence of a valid written rejection or selection of lower limits, UM coverage is equal to the amount of liability coverage. Tugwell, 609 So.2d at 198; Henson v. Safeco Insurance Companies, 585 So.2d 534, 540 (La.1991).
When a liability insurer is held liable, it pays on behalf of its insured not only the principal policy limits, but also any additional benefits provided for in the supplemental payment provisions. Thus, the actual liability coverage provided under the contract is the policy limits together with the benefits contained in the supplemental payment provisions. Because section 1406 requires, in the absence of a valid written waiver, UM coverage equal to liability coverage, it follows that "equal" UM coverage includes the policy limits as well as the benefits contained in the supplemental payment provisions.
It is well settled that an insurer has the right to limit liability and impose conditions or restrictions under a policy provided such limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La. 1/14/95); 630 So.2d 759. Because the UM statute allows an insured to reject UM coverage or select lower limits, an insurer may, without violating the statutory requirement, obtain a waiver limiting the application of supplemental payment provisions to liability claims. In the absence of a valid waiver, the supplemental payment provisions apply to UM claims by virtue of the statutory mandate contained in La.R.S. 22:1406 which establishes equal liability and UM coverage. In the present case, plaintiff did not execute a waiver. Nevertheless, State Farm contends that the quoted supplemental payment provision cannot, by its literal terms, apply to plaintiff's UM claim. State Farm notes that there is no "insured who owes any damages" as the result of a judgment; the only obligor is State Farm, the insurer.
Application of a supplemental payment provision to a UM claim arises under La.R.S. 22:1406 and not by virtue of contract. The fact that a provision would not, by its literal terms, apply to the UM claim is irrelevant. When a supplemental payment provision requires payment of interest in a liability suit, La.R.S. 22:1406 requires that such interest also be paid in a suit by an insured under its UM coverage. To hold otherwise, would effectively reduce the amount of UM coverage below the liability coverage in direct contravention of the express mandate of La.R.S. 22:1406. Thus, despite the use of the word "insured" in the quoted provision, we conclude that according to La.R.S. 22:1406, the interest benefit provided for in the liability context, must also be provided in the UM context.
We conclude that any provision of an insurance policy which enhances the liability coverage to the benefit of the insured must *995 be included within the ambit of the UM coverage unless there is a valid written rejection or selection of lower limits.

B. INTERPRETATION OF THE SUPPLEMENTARY PAYMENT PROVISION
Having determined that the supplementary payment provision applies to plaintiff's UM claim, we must now look to the specific wording of the provision to determine whether State Farm owes interest on that portion of the judgment in excess of its policy limits.
Under La.R.S. 13:4203 all liability and UM carriers owe interest on their policy limits from the date of judicial demand. Ainsworth v. Government Employees Insurance Company, 433 So.2d 709, 709 (La.1983) (holding UM carrier for legal interest on policy limits from date of judicial demand); Soprano v. State Farm Mutual Automobile Insurance Company, 246 La. 524, 165 So.2d 308 (La.1964) (holding liability insurer liable for legal interest on policy limits from date of judicial demand); LeBlanc v. New Amsterdam Casualty Co., 202 La. 857, 13 So.2d 245 (La.1943) (holding liability insurer liable for legal interest on policy limits from date of judicial demand).[3] Any policy provision which attempts to limit an insurer's liability for legal interest on the policy limits contravenes the public policy of La.R.S. 13:4203 and cannot be enforced. Soprano, 165 So.2d at 314. See also Hebert, 388 So.2d at 412; Doty, 186 So.2d at 335.
While section 13:4203 prohibits an insurer from reducing its liability for interest on its policy limits, that section does not prohibit insurers from lowering, excluding or extending their interest liability on amounts in excess of their policy limits. Limiting interest obligations for excess judgments does not violate the public policy of section 13:4203 which mandates legal interest on the policy limits from the date of judicial demand.
Insurers utilize supplemental payment provisions to outline their obligations with regard to interest. Thus, to determine an insurer's interest obligation on an excess judgment, we must refer to the supplemental payment provisions contained in the insurance contract.

1. LIABILITY CASES
In determining liability insurers' interest obligations on excess judgments, the courts of appeal interpreted various supplemental payment provisions.
Appellate courts frequently cite Doty v. Central Mutual Insurance Company when addressing this issue. There, the third circuit determined that according to La.R.S. 13:4203 the liability insurer was liable for interest on its policy limits from the date of judicial demand. Doty, 186 So.2d at 335-36. The court then referred to the supplemental payment provisions to determine the insurer's interest obligation on sums in excess of its policy limits. Under the supplemental provision the insurer agreed "[t]o pay, in addition to the applicable limits of liability:... all interest on the entire judgment therein which accrues after entry of the judgment..." Id. at 334. The court concluded that, according to this provision, the liability insurer was obligated to pay interest on the amount in excess of its policy limits from the date of judgment. Id. at 336.
Upon interpreting policy provisions identical to that quoted in Doty, other circuits have held liability insurers liable for interest on amounts in excess of their policy limits from the date of judgment. See Barnes v. Thames, 578 So.2d 1155 (La.App. 1st Cir. 1991); Levet v. Calais & Sons, Inc., 514 So.2d 153 (La.App. 5th Cir.1987); Glazer v. *996 Louisiana Trailer Sales, Inc., 313 So.2d 266 (La.App. 4th Cir.), writ not considered, 318 So.2d 47 (La.1975).
The interpretation of other supplemental payment provisions have sometimes lead to different results. In O'Donnell v. Fidelity General Insurance Company, where the policy provision expressly excluded interest on judgments, the second circuit held that the liability insurer's interest obligation was limited to that required by La.R.S. 13:4203, i.e., legal interest on its policy limits from date of judicial demand until paid. O'Donnell, 344 So.2d at 94. The language of the policy provision at issue excluded any obligation of the insurer to pay interest on amounts in excess of its policy. Id.
In Remedies v. Lopez, 560 So.2d 118, 119 (La.App. 3rd Cir.), writ denied, 563 So.2d 1155 (La.1990), the supplemental payment provision provided that "[w]e'll also pay interest on the full amount of the judgement even if the judgement is higher than our limits of liability. And we'll pay this interest from the day the judgement is entered...." After discussing the statutory requirements of La.R.S. 13:4203 and its earlier decision in Doty, the third circuit held the liability insurer liable for legal interest on sums in excess of its policy limits from the date of judgment as per the policy provision. Id. at 120.[4]
In interpreting supplementary payment provisions identical to the one in the present case, the second and third circuits held the liability insurers liable for interest on the entire judgments from the date of judicial demand. Fowler v. Roberts, 526 So.2d 266 (La.App. 2nd Cir.1988), writ granted, 531 So.2d 257 (La.1988), writ denied, 531 So.2d 278 (La.1988), aff'd on other issues, 556 So.2d 1 (La.1989); Petry v. Richard, 532 So.2d 286 (La.App. 3rd Cir.), writ denied, 533 So.2d 382 (La.1988).
Our decision in Soprano makes it clear that under La.R.S. 13:4203, all liability insurers are liable for interest on their policy limits from the date of judicial demand. Under the present decision, it is evident that all insurers are not liable for interest on excess judgments from the date of judgment.[5] Because section 13:4203 does not prohibit liability insurers from drafting supplemental payment provisions which limit, exclude or extend their interest obligations on excess judgments, each provision must be interpreted to determine the individual liability insurer's interest obligation on excess judgments.

2. UM CASES
The issue of a UM carrier's interest liability for excess judgments has not been addressed by this Court. While the cases of Ainsworth and Burton concerned UM policies and the question of legal interest, neither case raised the issue of the UM carrier's interest liability on excess judgments.
In Ainsworth, we determined that legal interest was due from a UM carrier from the date of judicial demand. Ainsworth, 433 So.2d at 709. However, we did not discuss what amount the legal interest is due.
In Burton v. Foret, 498 So.2d 706, 712 (La.1986), we established that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single tortious act. Thus, the UM carrier, who is solidarily liable with the tortfeasor, is liable for legal interest from the date of judicial demand against the tortfeasor even if the UM carrier was not joined in the action until a later date.[6]Id. We did not discuss in detail on what amount the interest was due.
*997 In reaching our conclusion in Burton, we approved the first circuit's holding in Brown v. Southern Farm Bureau Insurance Company, 426 So.2d 684 (La.App. 1st Cir.1982). Burton, 498 So.2d at 712. In Brown, the first circuit held that the UM carrier owed interest from the date of judicial demand under the public policy of La.R.S. 13:4203. Brown, 426 So.2d at 690. In our discussion in Burton, we neither approved nor disapproved of the reasoning employed by the first circuit in reaching its conclusion in Brown.
We now note that the court's reasoning in Brown is consistent with our holding in the present case. In discussing the UM carrier's interest liability, the court stated:
to award interest from the date of the judgment would violate the minimum statutory limit requirement of the uninsured motorist statute. La.R.S. 22:1406(D)(1)(a) prohibits the issuance of an automobile liability insurance policy in Louisiana unless it affords uninsured motorist coverage up to the amount of the policy limits for bodily injury liability, though the insured may reject the coverage or select lower limits in writing. The purpose of this statute is to place the innocent victim of an uninsured or underinsured motorist in the same position as if the tortfeasor had liability coverage. See Williams v. Buckelew, 246 So.2d 58 (La.App. 2d Cir.1970). When a liability insurer is held liable, it must pay on behalf of its insured not only the principal policy limits, but also legal interest thereon from the date of judicial demand until paid. See O'Donnell v. Fidelity General Ins. Co., 344 So.2d 91 (La. App. 2d Cir.1977), and cases cited therein. Any policy provision which attempts to limit the liability insurer's liability for legal interest from the date of judicial demand contravenes the public policy of La.R.S. 13:4203 and cannot be enforced. See O'Donnell, supra. Since uninsured motorist coverage is supposed to provide the same coverage as liability insurance, then these same rules should likewise apply to uninsured motorist insurance. Otherwise, the plaintiff who recovers under uninsured motorist insurance will receive less compensation than another plaintiff who recovers under liability insurance.
Brown 426 So.2d at 689. This reasoning is applicable to determining the UM carrier's interest liability on its policy limits as well as on excess judgments.
UM carriers' interest liability on excess judgments was specifically addressed in the more recent cases of Malbrough v. Wallace, 594 So.2d 428 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992) and Runnels v. Esteves, 550 So.2d 1225 (La.App. 4th Cir. 1989), writ denied, 558 So.2d 1126 (La.1990).[7] In these cases, the courts referred to the supplemental payment provisions in the liability portions of the contracts to determine the UM carriers' interest liability.
In Malbrough, a UM carrier appealed the trial court's award of interest on the excess judgment from the date of judicial demand. The policy at issue contained a supplemental payment provision which provided, "[i]n addition to our limit of liability, we will pay on behalf of a covered person: ... 3. Interest accruing after a judgment is entered in any suit we defend." Malbrough, 594 So.2d at 438. Upon interpreting the supplemental payment provision, the court held the UM carrier liable for interest on the excess judgment from the date of judgment. In support for its conclusion, the first circuit cited Barnes, Remedies, Pugh and Doty.[8]Id.
In Runnels the fourth circuit interpreted a supplemental payment provision identical to the one in the present case. The court followed the second circuit's decision in Remedies, which also interpreted the same provision[9], *998 and held the UM carrier liable for interest on the entire judgment from the date of judicial demand. Runnels, 550 So.2d at 1226-27.
State Farm contends that, because there is no relationship between supplemental payment provisions and UM coverage, it is error for courts to rely on the provisions when determining a UM carrier's interest liability. Additionally, State Farm contends that the jurisprudence which interprets these provisions in the liability context is inapplicable to UM cases. Accordingly, State Farm contends that the Malbrough and Runnels decisions are incorrect.
Because we have determined that the supplemental payment provisions of a liability policy apply to UM claims by virtue of La. R.S. 22:1304, courts must refer to these provisions when determining a UM carrier's interest liability. Additionally, the jurisprudence which interprets the supplemental provisions is relevant to UM claims. Malbrough and Runnels are correct in that each court interpreted the supplemental payment provision to determine the UM carriers' interest liability on the excess judgments.
In applying the foregoing analysis to the present case, we note that the supplemental payment provision, which is applicable through La.R.S. 22:1406, has been interpreted to require the insurer to pay interest on the entire judgment from the date of judicial demand. By including this provision in its policy, State Farm is liable for interest on the entire judgment from the date of judicial demand.

II
The second issue raised by State Farm is whether plaintiff, in settling with the tortfeasor and its liability insurer, has thereby waived her right to pursue interest on the settlement amount from her UM insurer.
Plaintiff, prior to the trial of this matter, granted a partial dismissal to the tortfeasor and its automobile liability insurance carrier, Champion, in exchange for its policy limits of $10,000.00. The release was not made part of the record. The trial judge ultimately cast plaintiff's UM carrier, State Farm, with the interest on the $10,000.00 provided by Champion.
In affirming the judgment of the trial court on rehearing, the court of appeal held that based on this court's decision in Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984) and La.Civ.Code art. 1803, "the trial court did not err in holding State Farm liable for the payment of judicial interest on the $10,000.00 paid to the plaintiff by the tortfeasor's insurer." Plaintiff, in brief, also cites Carona, for the proposition that "[s]ince full recovery is the goal of the legislation and because the tortfeasor and the UM carrier are codebtors in solido, we infer that a victim merely by his release of the tortfeasor does not forfeit any right against his UM carrier." Carona, 458 So.2d at 1279 (emphasis supplied).
The issue addressed by this court in Carona was whether a personal injury claimant, who failed to expressly reserve his rights to proceed against his UM carrier pursuant to former La.Civ.Code art. 2203, was barred from doing so by virtue of his settlement with the tortfeasor. Article 2203, which was replaced by La.Civ.Code art. 1803[10] in the revision of Louisiana obligations law which became effective on January 1, 1985, provided:
The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor *999 has expressly reserved his right against the latter.
In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission.
This court, in its ruling in Carona, declared that, "[t]he object of the UM statute is to promote full recovery for damages by automobile accident victims.... The technical rule of article 2203 serves as a barrier to full recovery by innocent accident victims, and thereby conflicts with the basic object of the UM legislation." We concluded that because the provisions of former article 2203 were superseded by La.R.S. 22:1406(D)(4) of the UM statute, the plaintiff-victim, despite his release of the tortfeasor, nevertheless retained all of his rights as against his UM carrier. We must now consider whether the holding of Carona, by extension, makes a UM insurer liable for the payment of judicial interest on the amount paid to the plaintiff by the tortfeasor's insurer.
State Farm asserts that the trial court and later, on rehearing, the court of appeal, erred in holding it liable for the payment of judicial interest on the $10,000.00 policy limits paid to the plaintiff by the tortfeasor's insurer. In support of its position, State Farm cites Malbrough v. Wallace and Pugh v. Gondrella.
In both Malbrough and Pugh, the injured parties, like the plaintiff in the case at bar, settled with the liability insurers of their respective tortfeasors for policy limits prior to trial. In both cases, the UM carrier's responsibility for interest on that portion of the judgment previously paid by the primary insurer became an issue on appeal.
The first circuit in Malbrough, cited and adopted the fourth circuit's earlier approach to this issue in Pugh, which looked to La.Civ. Code art. 2925 and concluded that plaintiff had waived her right to interest on the amount paid by the primary insurer through her failure to specifically reserve her rights thereto. Article 2925 provides:
The release of the principal, without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it.
Under the facts presented, we can find no error in this approach. Plaintiff has not cited, nor are we aware of any authority which would support her contention that the provisions of this article were intended for the sole protection of settling parties. The tortfeasor, its liability insurer and the UM carrier are solidarily bound to repair the damage caused by the tortious conduct. Where the injured party elects to compromise his claim against one solidary obligor, he must either simultaneously assert his claim to judicial interest, or expressly reserve his rights thereto.
As was the case in Pugh, the release was not made a part of the record. We are similarly forced to assume that there was no reservation as to interest since plaintiff has not addressed this in her argument. Absent evidence of an express reservation by plaintiff as to interest on the amount paid by the liability insurer, we conclude that under the provisions of La.Civ.Code art. 2925, any rights plaintiff may have had to recover interest were released with the insurer.

III
The final issue raised by State Farm is whether it should have been obligated to pay legal interest from the date of judicial demand until date of tender on that portion of its UM coverage which it paid prior to trial.
State Farm concedes that the first circuit in Russell v. Maryland Casualty Company, 544 So.2d 64 (La.App. 1st Cir.1989), has been the only court to directly address this issue. In Russell, the court held that the trial court acted within its authority by awarding legal interest on the amount tendered. The court based its holding on the language of La.Code Civ.P. art. 1921 which provides that "[t]he court shall award interest in the judgment as prayed for or as provided by law." Nevertheless, State Farm asserts that a UM carrier should not be penalized by having to pay judicial interest prior to the time it receives satisfactory proof of the insured's loss.
*1000 The clear and unambiguous language of La.R.S. 13:4203 specifically provides that "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts." (Emphasis supplied). We therefore conclude that this assignment of error is without merit.

CONCLUSION
Consistent with our holdings above, we conclude that State Farm is obligated to pay legal interest on the entire amount of the judgment less the $10,000.00 which plaintiff received in settlement from Champion from the date of judicial demand until paid. Costs of this proceeding are assessed against State Farm. AMENDED, AND AS AMENDED, AFFIRMED.
WATSON and VICTORY, JJ., dissent.
LEMMON, J., dissents and will assign reasons.
LEMMON, Justice, dissenting.
La.Rev.Stat. 22:1406D requires uninsured motorist coverage, in the absence of a rejection or a selection of lower limits, "in not less than the limits of bodily injury liability provided by the policy...." (emphasis added). The majority reasons that the word "limits" means overall policy coverage, so that the overall coverage provided in the uninsured motorist section of the policy must be at least equal to the overall coverage provided in the liability section. This is a vastly expansive interpretation of the word "limits" and of this Court's decisions in Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), and Henson v. Safeco Ins. Co., 585 So.2d 534 (La.1991).
The apparent purpose of the supplemental payment provision under the liability coverage in the present case is to protect the insured from liability for interest that accrues during the period in which the insurer is defending the claim. The purpose certainly is not to increase the liability policy limits provided in the declarations on the cover of the policy, which are the "limits" to which La.Rev.Stat. 22:1406D refers under the more reasonable statutory interpretation.
I therefore dissent from the award of interest on the amount of damages above the policy "limits" of the uninsured motorist carrier.
NOTES
[1] Chief Judge Morris A. Lottinger, Jr., of the Court of Appeal, First Circuit, sitting by assignment in place of Justice James L. Dennis. Calogero, C.J. not on panel. Rule IV, Part 2, § 3.
[2] This amount represents the total amount of the verdict less credits for the $5,000 tender and the $10,000 settlement with the tortfeasor and its insurer.
[3] The courts of appeal have applied this rule in numerous cases. See O'Donnell v. Fidelity General Insurance Company, 344 So.2d 91 (La.App. 2nd Cir.1977); Doty v. Central Mutual Insurance Company, 186 So.2d 328, 335 (La.App. 3rd Cir.) (on rehearing), writ denied, 249 La. 486, 187 So.2d 451 (1966) (both holding liability insurer liable for legal interest on policy limits from date of judicial demand); Jones v. American Fire-Indemnity Insurance Company, 442 So.2d 772, 777 (La.App. 2nd Cir.1983); Hebert v. Ordoyne, 388 So.2d 407, 412 (La.App. 1st Cir.1980) (both holding UM carrier liable for legal interest on policy limits from date of judicial demand).
[4] See Fletcher v. Leader National Insurance Company, 513 So.2d 1226 (La.App. 4th Cir.1987) (when interpreting the same provision, the fourth circuit reached the same conclusion).
[5] To the extent cases imply that all liability insurer's are liable for interest on excess judgments from the date of judgment, these cases are incorrect, as distinct supplemental payment provisions result in different liability obligations. See Pugh v. Gondrella, 522 So.2d 1257 (La.App. 4th Cir. 1988); Orgeron v. Earl Gibbon Transport, 235 So.2d 134 (La.App. 4th Cir.1970).
[6] In Jones v. American Fire-Indemnity Insurance Company, 442 So.2d 772 (La.App. 2nd Cir.1983), the second circuit held that as a solidary obligor with the tortfeasor, a UM carrier is liable for interest from the date of judicial demand under La.R.S. 13:4203. The award did not exceed the UM insurer's policy limits and therefore, the court did not discuss excess judgments.

In Hebert v. Ordoyne, 388 So.2d 407 (La.App. 1st Cir.1980), the first circuit held that under La.R.S. 13:4203, a UM carrier is liable for interest from the date of judgment. The court did not discuss the issue of interest on excess judgments.
[7] In Pugh v. Gondrella, 522 So.2d 1257 (La.App. 4th Cir.1988), the fourth circuit was also called upon to determine the amount of legal interest owed by a UM insurer. In reaching its conclusion that the UM insurer was liable for interest on its policy limits only, the court applied the principles of La.Civ.Code art. 2925.
[8] With the exception of Pugh, these cases involved the interpretation of supplemental payment provisions as they relate to liability insurers.
[9] Remedies interpreted the same supplemental payment provision as it related to the liability insurer.
[10] In place of La.Civ.Code art. 2203 (1870), 1984 La. Acts, No. 331 created new article 1803 (effective January 1, 1985) which provides:

Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission of the debt was intended for the benefit of all the solidary obligors.