686 So.2d 1041 (1996)
Linda C. KIEFER
v.
SOUTHERN FREIGHTWAYS, INC., Carrier Insurance Company and Paul D. Lloyd.
Linda C. KIEFER
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION.
Nos. 95-CA-2037, 95-CA-2038.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
*1042 Russ M. Herman, James C. Klick, Herman, Herman, Katz & Cotlar, New Orleans, for Plaintiff/Appellant.
James Ryan, III, Peter S. Title, Sessions and Fishman, New Orleans, for Defendant-Appellant.
B. Ralph Bailey, Frederick H.N. Dwyer, Bailey & Dwyer, Mandeville, for Defendant-Appellant.
Before BYRNES, CIACCIO, ARMSTRONG and LANDRIEU, JJ., and JAMES C. GULOTTA, J. Pro Tem.
ARMSTRONG, Judge.
This is an uninsured/underinsured motorist ("UM") coverage case. The tortfeasor's liability insurer was declared insolvent. The Florida Insurance Guaranty Association ("FIGA") "picked up" the failed liability insurer's coverage. FIGA is immune, under Florida statutory law as interpreted by Florida courts, from liability for prejudgment interest. The trial court held the UM insurer involved, State Farm Mutual Automobile Insurance Company ("State Farm"), liable for $50,000 of the prejudgment interest and held the Louisiana Insurance Guaranty Association ("LIGA") liable for the remainder, $114, 173.61, of the prejudgment interest.
On appeal, State Farm argues that it is not liable under the UM coverage provisions of its policy because the tortfeasor's liability insurer failed more than one year after the accident which injured the plaintiff. LIGA, supported by the plaintiff, argues that State Farm is liable for the entire $164,173.61 in prejudgment interest. We hold that State Farm is liable for the entire $164,173.61 in prejudgment interest and, therefore, we amend the judgment of the trial court as to State Farm and vacate the judgment as to LIGA.[1]
The plaintiff, Linda Kiefer, was injured in a motor vehicle accident in January, 1983. Her car was struck by a truck driven by Paul D. Loyd and owned by Loyd's employer, Southern Freightways, Inc. ("Southern"). Southern was insured, under a $500,000 liability policy, by Carriers Insurance Company *1043 ("Carriers"). Kiefer sued Loyd, Southern and Carriers.
Carriers was found to be insolvent by the Iowa Commissioner of Insurance. Kiefer amended her petition to add as a defendant State Farm with whom she had a policy with $50,000 UM coverage. She also added LIGA as a defendant.
LIGA answered and asserted that, as Loyd and Southern were residents of Florida, and as the Carriers policy covering Southern was issued in Florida, LIGA would have no liability to Kiefer unless and until Kiefer has exhausted her remedies against FIGA. Kiefer then dismissed LIGA without prejudice and amended her petition again to make FIGA a defendant.
The case was tried in October 1992. At trial, it was stipulated that Carriers was the sole liability insurer of Southern, that Carriers was insolvent, and that FIGA had "picked up" Carriers obligations under Carriers' liability policy. The jury rendered a verdict in favor of Kiefer and determined her damages (the principal amount of the judgment) to be $165,143. The trial court entered judgment for $100, the deductible under the Carriers policy, against Southern. The trial court entered judgment for the total amount of the jury award against Southern and FIGA solidarily. The trial court awarded prejudgment interest as to only the $100 judgment against Southern alone. Because FIGA is statutorily immune from liability for prejudgment interest under Florida law, the trial court did not award prejudgment interest as to the judgment against Southern and FIGA solidarily for the balance of the $165,143. The trial court dismissed all claims against State Farm.
From that judgment on the jury verdict, Kiefer appealed to this court and we decided that appeal in our decision Kiefer v. Southern Freightways, Inc., 626 So.2d 962 (La.App. 4th Cir.), writ denied, 635 So.2d 1122, 1123 (La.1994). In that previous appeal, FIGA argued that State Farm, as the UM insurer, was liable up to its UM policy limit, $50,000, before FIGA was liable, so that FIGA would be liable only for the excess of the judgment over $50,000 (up to FIGA's statutory limit of liability of $300,000). State Farm argued that it was liable for UM coverage only after Kiefer had exhausted her remedies against both FIGA and LIGA. Thus, a key issue in the previous appeal was the order of liability of FIGA, LIGA, and State Farm. This issue was complicated by the fact that Kiefer is entitled to prejudgment interest, La.R.S. 13:4203, and FIGA is statutorily immune from liability for prejudgment interest.
As to the principal amount of judgment, we rejected FIGA's contention that it was liable only after State Farm's UM policy was exhausted. This was based on the "nonduplication of recovery" statute, La.R.S. 22:1386, as it existed at the time of the accident and as interpreted by the Supreme Court in Hickerson v. Protective National Ins. Co., 383 So.2d 377 (La.1980). Although the nonduplication of recovery statute had been amended in 1990 so that a UM insurer such as State Farm would be liable ahead of LIGA and FIGA, we were bound in the previous appeal by our own precedent that the 1990 amendment to the nonduplication of recovery statute did not apply to cases arising from pre-1990 claims against insolvent liability insurers. Dangerfield v. Soto, 599 So.2d 1092, 1094 (La.App. 4th Cir.1991).
As to the prejudgment interest on the judgment, we held that the trial court had erred by failing to award prejudgment interest on the balance over $100 of the $165,143 principal amount. As to the order of liability for the prejudgment interest, we held that:
Southern is cast with all pre-judgment interest because FIGA is immune. If Southern is insolvent, which is not evident from the record, but is alleged in briefs, than [sic] La.R.S. 22:1386, as it existed at the time of the accident, provides that recovery is next owed by LIGA. State Farm owes no coverage until coverage owed by Southern, FIGA, and LIGA are exhausted. Only if the plaintiff's judgment including pre-judgment interest is unpaid by these sources, will an underinsured situation arise and shall State Farm be cast with liability.
* * * * * *
For the foregoing reasons, we amend the trial court's judgment and award interest *1044 from the date of demand to be paid by Southern. If Southern is not solvent the plaintiff may pursue recovery for pre-judgment interest against LIGA and State Farm, in that order. In all other respects the judgment is affirmed.
626 So.2d at 964 (emphasis in original). Thus, the order of liability generally was held to be (1) Southern, (2) FIGA, (3) LIGA, and (4) State Farm. But, because FIGA was statutorily immune from liability for prejudgment interest, the order of liability as to prejudgment interest became (1) Southern, (2) LIGA, and (3) State Farm.
Several months after our decision in the previous appeal, the Supreme Court rendered its decision in Segura v. Frank, Nos. 93-1271, 93-1401 (La.1-14-94); 630 So.2d 714.
Segura, in contrast to our Dangerfield decision, held that the 1990 amendment to the nonduplication of recovery statute would be given retroactive effect. Under that 1990 amendment to La.R.S. 22:1386(A), UM coverage must be exhausted before the insurance guaranty associations become liable. Because Segura held that amendment to be retroactive, and thus applicable to this case, the order of liability changed in this case. State Farm now ranked ahead of LIGA as to liability for prejudgment interest.
Kiefer then filed suit against LIGA and that suit was consolidated with the suit pending against Southern, FIGA, and State Farm. Kiefer filed a Rule in those consolidated actions to calculate and assess prejudgment interest. The trial court dismissed Kiefer's Rule without prejudice on the ground that, under our opinion in the previous appeal, Kiefer was required to exhaust her remedies against Southern before proceeding against State Farm or LIGA for the prejudgment interest. Kiefer applied to this court for supervisory writs to review that dismissal. We granted the writ application and held in an unpublished November 29, 1994 decision that the trial court should conduct a hearing on the Rule, including the taking of evidence, and that "the plaintiff [Kiefer] bears the burden of producing for the record evidence of Southern's insolvency."[2]
Kiefer then applied to the Supreme Court for Supervisory and/or Remedial Writs and the Supreme Court, in an unpublished March 30, 1995 decision, held: Granted. Judgment of the court of appeal is reversed insofar as it holds that plaintiff must produce evidence of Southern Freightways, Inc.'s insolvency. For the purpose of State Farm's liability, the only relevant inquiry is whether Southern is underinsured. Case remanded to the trial court for further proceedings.
Thus, Southern's insolvency was removed as an issue as to the assessment of prejudgment interest.
Combining that removal of Southern from the analysis, with our decision in the previous appeal that FIGA is not liable for prejudgment interest (a point not challenged in this appeal), with the Supreme Court's Segura decision that places UM insurers ahead of LIGA in the order of liability, results in an order of liability for the prejudgment interest in this case of: (1) State Farm and (2) LIGA. This order of liability is not challenged in this appeal. However, in this appeal, State Farm argues that it has no liability at all under the UM provisions of its policy. Further, LIGA argues in this appeal that State Farm is liable for all of the prejudgment interest, not just $50,000 as held by the trial court, and that, consequently, LIGA would have no liability for the prejudgment interest.
We turn first to State Farm's argument that it is not liable at all under the UM provisions of its policy. The relevant language is as follows:
Uninsured Motor Vehiclemeans:
1. a land motor vehicle, the ownership, maintenance or use of which is:
a. not insured or bonded for bodily injury liability at the time of the accident; or
b. insured or bonded for bodily injury liability at the time of the accident; but
(1) the limits of liability are less than required by the financial responsibility act of *1045 the state where your car is mainly garaged; or
(2) the insuring company denies coverage or becomes insolvent within one year after the accident; or
(3) the limits of liability:
(a) are less than the amount of damages the insured is legally entitled to collect for bodily injury, or
(b) have been reduced by payments to persons other than an insured to less than the amount of such damages.
It is uncontested that Southern was insured by Carriers at the time of the accident so that UM policy provisions 1.a and 1.b(1) are not applicable. Also, there is no contention that there have been any payments that could make UM provision 1.b(3)(b) applicable. State Farm contends that the only UM policy provision which is applicable is UM provision 1 b(2) which is applicable because Carriers became insolvent. State Farm then points out that Carriers became insolvent more than a year after the accident (a point not contested by Kiefer or LIGA) so that there is no UM coverage under UM provision 1.b(2). Kiefer and LIGA do not dispute that there is no coverage under UM provision 1.b(2).
However, LIGA and Kiefer argue that UM provision 1.b(3)(a) also is applicable. That provision, referred to by the parties' briefs as an "underinsured" coverage provision (as opposed to an "uninsured" coverage provision), applies when the tortfeasor's vehicle was "insured... for bodily injury liability at the time of the accident; but ... (3) the limits of liability: (a) are less than the amount of damages the insured is legally entitled to collect for bodily injury."
The issue, to use the terminology of the parties' briefs, is whether Southern is "underinsured," so that UM provision 1.b(3)(a) is applicable, when FIGA provided coverage in place of Carriers for the principal amount of the judgment but not for the prejudgment interest. State Farm argues that, because an insurance guaranty association, FIGA, provided coverage rather than an insurance company, Carriers, Southern is "uninsured" rather than "underinsured."[3] LIGA and Kiefer argue in response that, regardless of whether liability coverage was being provided by FIGA rather than Carriers, there was some liability "insurance" (i.e., for the principal amount of the judgment), but not liability coverage for the full amount Kiefer legally is entitled to collect (because FIGA is not liable for the prejudgment interest), so there is an "underinsured" situation rather than an "uninsured" situation.
LIGA and Kiefer have the better position. At the original trial below, there was a written stipulation by all parties, including State Farm, which provided that FIGA "picked up the liability of Carriers Insurance Company under its policies of insurance and insures Southern Freightways." Thus, it was expressly stipulated that FIGA "insures" Southern. Also, FIGA's liability emanates from the Carriers liability policy issued to Southern albeit subject to Florida legal limitations as to prejudgment interest and otherwise as to FIGA's liability. In light of that stipulation, it would be anomalous to hold that Southern is completely "uninsured."
In any case, and perhaps more importantly, LIGA and Kiefer have a reasonable position that the present case presents an "underinsured" motorist situation to which UM provision 1.b(3)(a) is applicable. Put another way, reasonable minds can differ with State Farm's contention that UM provision 1.b(3)(a) is not applicable under the facts of this case. Doubtful policy provisions must be interpreted in favor of coverage. If one reasonable interpretation of policy language will result in coverage, while another reasonable interpretation of that policy language *1046 will result in a lack of coverage, then the interpretation under which there will be coverage must be chosen. See, e.g., Yount v. Maisano, 627 So.2d 148, 151 (La.1993); Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Thus, in the present case, we must adopt the interpretation, that UM coverage provision 1.b(3)(a) is applicable, under which there will be UM coverage under the State Farm policy.
Lastly as to this issue, we believe that State Farm should be barred by the "law of the case" doctrine from arguing that this case presents an "uninsured" motorist situation to which only UM provision 1.b(2) is applicable because State Farm made that same argument, and it was rejected, in the previous appeal. In the previous appeal, we expressly noted State Farm's argument that "no UM coverage was owed because Carriers became insolvent more than one year after the accident." Kiefer, 626 So.2d at 963. We also noted that State Farm's argument had some merit. Id. Nevertheless, we ultimately concluded that State Farm would be liable (after LIGA) and, thus, rejected State Farm's argument:
State Farm owes no coverage until coverage owed by Southern, FIGA, and LIGA are exhausted. Only if the plaintiff's judgment including pre-judgment interest is unpaid by these sources, will an underinsured situation arise and State Farm shall be cast with liability.
* * * * * *
If Southern is not solvent the plaintiff may pursue recovery for pre-judgment interest against LIGA and State Farm in that order.
Kiefer, 626 So.2d at 964 (emphasis in original). The conclusion is inescapable that State Farm is re-urging in the present appeal an argument that was squarely presented, and ultimately rejected, in the previous appeal.
Under the "law of the case" doctrine, an appellate court generally will not reconsider a ruling made in a previous appeal. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (1971). State Farm points out that LIGA was not a party at the time of our decision in the previous appeal and thus, State Farm contends, the law of the case doctrine does not apply. However, the law of the case doctrine "applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court." Day, 256 So.2d at 107 (emphasis added). In the present appeal, the law of the case doctrine is being applied "against" State Farm and State Farm was, of course, a party at the time of our decision in the previous appeal.
State Farm also contends that the law of the case doctrine does not apply because our rejection of State Farm's argument in our decision in the previous appeal was "palpable error" and/or because adhering to our decision in the previous appeal would result in "manifest injustice." However, any such exception to application of the law of the case doctrine must be based upon much more than a party's disagreement with a previous decision. "Argument is barred where there is merely doubt as to the correctness of a former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice." Day, 256 So.2d at 107. We have no reason even to doubt the correctness of our decision in the prior appeal, particularly in view of the stipulation and the rules for interpretation of insurance policies that we have discussed above, and there is certainly no basis to conclude that there was a "palpable error" in our decision in the previous appeal. Nor do we see any "manifest injustice" in applying the law of the case doctrine. State Farm had a full opportunity to present its argument in the previous appeal and, particularly in view of the fact that we expressly noted that argument and commented that it had some merit, it was fully considered in the previous appeal. Thus, State Farm may not re-urge that same argument in this present appeal.
Next, we turn to the argument of LIGA and Kiefer that State Farm is liable for all of the $164,173.64 prejudgment interest rather than for just the $50,000 prejudgment interest for which State Farm was cast in judgment by the trial court. Apparently, the trial court assessed only $50,000 of the *1047 prejudgment interest against State Farm because State Farm's UM policy limit is $50,000. However, after the trial court rendered its judgment, the Supreme Court rendered its decision in Martin v. Champion Insurance Co., No. 95-0030 (La.6-30-95); 656 So.2d 991, and that Supreme Court decision makes it clear that State Farm is liable for all of the prejudgment interest despite its $50,000 UM policy limit. Thus, because we, unlike the trial court, have the guidance of the Supreme Court's Martin decision, we must modify the trial court's decision to increase the judgment against State Farm from $50,000 to $164,173.64.
State Farm's policy in the present case has a "supplemental payment" provision in its liability coverage provisions, which states:

In addition to the limits of liability, we will pay for an insured, any costs listed below from such accident ... (2) interest on all damages owed by an insured as a result of a judgment until we pay, offer or deposit in the court the amount due under this coverage. (emphasis added)
State Farm also was the UM insurer in the Martin case and its policy had the same supplemental payments provision. The Martin court held that the supplemental payments provision applied to UM coverage unless there was a valid rejection or lower limits selection of UM coverage by the insured and that, as a result, State Farm was liable for all prejudgment interest. State Farm does not argue that there was a valid rejection of UM coverage or selection of lower limits by Kiefer in the present case. Therefore, in the present case, as in Martin, State Farm is liable for all of the prejudgment interest.
Lastly as to this issue, because Kiefer will collect all of the prejudgment interest from State Farm, LIGA has no liability for the prejudgment interest.
Kiefer requests that we impose sanctions against State Farm for taking this appeal on the ground that this appeal by State Farm is frivolous. We do not believe that State Farm's appeal warrants sanctions.
For the foregoing reasons, we amend the judgment of the trial court to increase the judgment against State Farm from $50,000 to $164,173.64, vacate the judgment of the trial court as to LIGA, and otherwise affirm the judgment of the trial court.
AMENDED IN PART; VACATED IN PART; AND OTHERWISE AFFIRMED
CIACCIO, Judge, dissenting with reasons.
I respectfully dissent.
I find that our earlier decision was in error and should be reversed and amended.
State Farm is liable to plaintiff only if there is U.M. coverage. U.M. coverage would exist under two circumstances: 1) Underinsurance, and 2) The tortfeasor's liability insurer became insolvent within one year of the accident.
It is undisputed that Southern's liability insurer became insolvent more than one year after the accident. The Supreme Court in its March 30, 1995 writ disposition declared:
Granted. Judgment of the court of appeal is reversed insofar as it holds that plaintiff must produce evidence of Southern Freightways, Inc.'s insolvency. For the purpose of State Farm's liability, the only relevant inquiry is whether Southern is underinsured. Case remanded to the trial court for further proceedings.
(Emphasis added).
It is undisputed that Southern had a $500,000 liability policy in force on the date of the accident which exceeded the amount of plaintiff's claim which had been reduced to a judgment in the principal amount of $165,143.
Thus there is no basis for U.M. coverage if the date of the accident is dispositive in determining coverage. The cases have uniformly held that U.M. coverage is determined as of the date of the accident. See: Keller v. Amedeo, 512 So.2d 385 (La.1987); Holton v. Brown, 94-2687 (La.App. 4 Cir. 5/16/95); 658 So.2d 6, writ denied 95-2279, 95-2308 (La.12/8/95); 664 So.2d 423; and, Rudolph v. Weckesser, 95-1044 (La.App. 5 Cir. 5/15/96); 675 So.2d 1158.
The subsequent involvement of F.I.G.A. and its exemption from liability for pre-judgment *1048 interest cannot create U.M. coverage where none existed as of the time of the accident. F.I.G.A.'s liability in place of the insolvent insurer does not retroactively create coverage where none existed. I reject the notion that State Farm is prohibited from raising its coverage defense because of a law of the case theory or because of the claim that State Farm stipulated to coverage. The record does not support either theory.[4]
Accordingly, I would amend the trial court judgment to dismiss plaintiff's claims against State Farm and to cast L.I.G.A. in judgment for the full amount of pre-judgment interest.
LANDRIEU, Judge, dissenting.
For the reasons assigned by J. Ciaccio, I respectfully dissent.
NOTES
[1] In holding that State Farm is liable for all of the prejudgment interest, we, unlike the trial court, have the benefit of a Supreme Court decision rendered after the trial court's judgment, Martin v. Champion Ins. Co., No. 95-C-0030 (La.6-30-95), 656 So.2d 991.
[2] The decision on the writ application also dealt with issues other than proof of Southern's insolvency, but those issues are not relevant to the present appeal.
[3] State Farm cites Holton v. Brown, No. 94-CA-2687 (La.App. 4th Cir.5-16-95), 658 So.2d 6, writ denied, Nos. 95-C-2279, 95-C-2308 (La. 12-8-95), 664 So.2d 423, which involved an insolvent liability insurer and a State Farm Policy with UM provisions identical to those in the present case. However, that decision gives no support to State Farm's argument. In Holton, we agreed with the trial court that there was no coverage under UM provision 1.b(2) because the liability insurer became insolvent more than one year after the claim. However, we reversed a summary judgment in favor of State Farm because of the possibility of coverage under UM provision 1.b(3)(a).
[4] The law of the case is the Supreme Court's writ disposition of March 30, 1995.