921 So.2d 85 (2006)
Terry LeBLANC and Michelle S. LeBlanc
v.
Gail B. AYSENNE and the Handover Insurance Company.
No. 2005-C-0297.
Supreme Court of Louisiana.
January 19, 2006.
Rehearing Denied March 10, 2006.
*87 Perret Doise, Ian A. MacDonald, Lafayette, for applicant.
LeBlanc & Waddell, Jody Edward Anderman, Baton Rouge, Paul T. Landry, Franklin, for respondent.
TRAYLOR, J.[*]
In this case we are presented with the issue of whether an insurer may contractually limit an insured's recovery of legal *88 interest and confine interest payments on a judgment to the policy limits payable by the insurer.

FACTS AND PROCEDURAL HISTORY
On October 30, 1998, Terry LeBlanc was involved in a motor vehicle accident with Gail Aysenne ("Aysenne"). As a result of the injuries sustained in the accident, Terry LeBlanc and his wife, Michelle Leblanc (hereinafter referred to as "the LeBlancs"), filed suit against Aysenne; her insurer, Hanover Insurance Company; St. Martin Parish School Board and the State, through the Department of Transportation and Development ("DOTD"). The LeBlancs subsequently amended their petition and added as a defendant Terry LeBlanc's uninsured/underinsured carrier ("UM"), Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau").
Prior to trial, the LeBlancs dismissed their claims against the St. Martin Parish School Board and the DOTD. The LeBlancs also settled their claims with Aysenne for $295,000.00, the limits of Aysenne's liability policy with Hanover. The case proceeded to trial with Farm Bureau as the sole defendant.
After a two day jury trial, the jury returned a verdict in favor of the LeBlancs in the amount of $1,271,494.00, and assessed 90% fault to Aysenne.[1] The final judgment was signed on May 2, 2003, and held Farm Bureau responsible for its entire policy limits of $100,000.00. The judgment further provided that Farm Bureau was responsible only for the legal interest on $100,000.00 from the date of judicial demand until paid.[2]
The LeBlancs appealed the trial court's ruling on the assessment of legal interest. According to the LeBlancs, Farm Bureau is responsible for legal interest on the entire judgment of $1,144,344.00, the amount attributable to the underinsured driver. The Court of Appeal, First Circuit, affirmed the trial court but amended the judgment insofar as the calculation of interest. The appellate court amended the judgment to reflect that Farm Bureau is obligated to pay legal interest on its $100,000 policy limits from the date of judicial demand until May 2, 2003, and ordered Farm Bureau to pay interest on the excess judgment, $1,144,344.63, from the date of judgment until payment of the policy limits and interest thereon.
Farm Bureau sought a writ of certiorari to this Court, contending that the policy language is clear and that liability is limited to interest on the policy limit only. Based on our review of the record, briefs and argument of counsel, we conclude that the crux of this matter hinges on the issues of: (1) whether an insurer may contractually limit an insured's recovery of legal interest and confine interest payments on a judgment to the policy limit payable by the insurer; (2) or whether an insured is entitled to interest on the entire judgment attributable to an uninsured/underinsured driver. This Court granted *89 Farm Bureau's writ application to thoroughly review these issues.[3]

LAW AND DISCUSSION
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94); 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). There are certain elementary legal principles which apply to the interpretation of insurance policies. Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5, 630 So.2d at 763. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. Civ.Code art.2047; Louisiana Ins. Guar. Ass'n, 93-0911, p. 5, 630 So.2d at 763. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., 536 So.2d at 420 (La.1988). If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. Id.
In analyzing insurance contracts, courts must remain mindful that insurance contracts should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, p. 11 (La.4/11/00); 759 So.2d 37, 43; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99); 729 So.2d 1024, 1028. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 4 (La.1/15/02); 805 So.2d 1134, 1138; Peterson, 98-1712, p. 5, 729 So.2d at 1029. The judiciary's responsibility in interpreting insurance contracts is to determine the parties' common intent. Louisiana Ins. Guar. Ass'n, 93-0911, p. 5, 630 So.2d at 763. Armed with these essential legal principles, we must first examine the insurance contract to determine whether any ambiguities exist.

FARM BUREAU'S UNINSURED/UNDERINSURED MOTORIST PROVISIONS
Farm Bureau issued an automobile policy to Terry LeBlanc agreeing to insure him for both liability and uninsured/underinsured coverage. Mr. LeBlanc's Coverage A-Liability, "Bodily Injury" limits were designated at $100,000 per accident and $300,000 per occurrence. However, Mr. LeBlanc elected lower limits for Coverage Uninsured-Bodily Injury ("UMBI")-uninsured/underinsured motorist coverage.[4] *90 The limits of Mr. LeBlanc's UMBI coverage are $50,000 per person and $100,000 per occurrence.[5]
The LeBlancs settled with Aysenne and her insurer for $285,000, but asserted that their damages exceeded that amount.[6] Since the LeBlancs sought an excess amount from the underinsured motorist coverage provided by Farm Bureau, we must examine the relevant provisions of Farm Bureau's policy regarding underinsured motorist coverage. The relevant provisions provide:

PART IV. PROTECTION AGAINST UNINSURED/UNDERINSURED MOTORIST

Coverage U  Uninsured Motorist (Damage for Bodily Injury)
To pay all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.
The policy further sets forth the limits of liability of such coverage:
Limits of Liability
(a) The limit of uninsured motorist liability for bodily injury shown on the Declarations as applicable to each person is our maximum limit of liability for all damages resulting from bodily injury to any one person incurred in any one accident. The "each person" limit includes, but is not limited to claims for wrongful death, loss of services, loss of consortium, bystander injury, and mental anguish and emotional distress suffered by others. Subject to this limit for "each person", the limit of uninsured motorist liability for bodily injury shown on the Declarations for "each accident", is our maximum limit of liability for all damages sustained by all persons for bodily injury resulting from any one accident.
The LeBlancs contend that Farm Bureau's policy obligates the insurer to pay interest on the entire verdict attributable to Aysenne, i.e. $1,144,344.00. However, the LeBlancs' argument focuses on language contained in one provision of the policy. Reliance on one provision, contained in Coverage U, which provides that Farm Bureau will "pay all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury ...," is a narrow and incomplete interpretation of the policy.
We disagree with such a narrow reading of the policy. Instead, we must consider the policy as a whole and not just specific provisions in one section as the LeBlancs suggest. We must first examine the entirety of the policy pertaining to Coverage *91 U; specifically, the provision which discusses Farm Bureau's limit of liability. The wording of that section of the policy is clear and unambiguous:
"the limit of uninsured motorist liability for bodily injury shown on the Declarations as applicable to each person is our maximum limit of liability for all damages resulting from bodily injury to any one person incurred in any one accident."
There is but one interpretation which can be determined from this language. Farm Bureau's liability is maximized at the amount shown on the declarations page. The declarations page indicates maximum underinsured coverage as $100,000.
Insurance contracts are to be read as a whole. Peterson v. Schimek, 98-1712 p. 6, 729 So.2d at 1030. The fact that Farm Bureau's policy states that the insurer will pay "all sums" is logically clarified by the provision setting forth the limit of liability. To assume no limit would be imposed on an insurance policy would lead to an absurd and illogical result. The two provisions of the contract, when read together, contain no ambiguities and clearly provide that Farm Bureau's obligation, under the uninsured/underinsured provision of Mr. LeBlanc's policy, is limited to $100,000.
The final judgment allocated 90% fault to Aysenne and of the entire judgment $1,144,344,00 was attributable to Aysenne. Thus, Farm Bureau is responsible for any excess judgment, within its policy limits. Therefore, we find the lower courts were correct in holding Farm Bureau liable to the LeBlancs for the policy limit of $100,000.

APPLICABILITY OF FARM BUREAU'S SUPPLEMENTAL PAYMENT PROVISION
We have concluded above that the policy issued by Farm Bureau to Mr. LeBlanc limits Farm Bureau's liability for uninsured/underinsured coverage to $100,000. However, our inquiry regarding total payments by Farm Bureau requires further review of the policy.
It is well settled that an insurer has the right to limit liability and impose conditions or restrictions under a policy provided such limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480, p. 3 (La.4/11/94); 634 So.2d 1180, 1183. La. R.S. 13:4203 imposes the requirement that all liability insurers are liable for interest on their policy limits from the date of judicial demand. Martin v. Champion, 95-0030 p. 8 (La.6/30/95); 656 So.2d 991, 996. Any provision of an insurance policy which enhances the liability coverage to the benefit of the insured must be included within the ambit of the UM coverage. Martin v. Champion Ins. Co., 95-0030 p. 4, 656 So.2d at 995. As such, insurers utilize supplemental payment provisions to outline their obligations regarding interest payments and courts must refer to supplemental payment provisions when determining a UM carrier's interest liability. Martin v. Champion Ins. Co., 95-0030 p. 11, 656 So.2d at 998. Therefore, to determine Farm Bureau's interest liability to the LeBlancs, we must again review the insurance contract to determine whether Farm Bureau's policy contains a supplemental payment provision and if so, the limits of coverage.
Farm Bureau's policy contains a supplemental payment provision which declares that Farm Bureau agrees:
To pay, in addition to the applicable limit of liability:
(a) all expenses of the Company, all costs taxes against the insured in *92 any such suit, all interest on any amount within the policy limits from the date of judicial demand until entry of judgment, and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;
Farm Bureau maintains the insurance contract specifically limits its obligation to pay legal interest only on the limits of its policy. Conversely, the LeBlancs submit that the provisions of Coverage U requires Farm Bureau to pay "all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured automobile because of bodily injury ..." According to the LeBlancs, this language obligates Farm Bureau to pay legal interest on the entire jury verdict attributable to Aysenne from the date of judicial demand until paid. In support of this position, the LeBlancs rely on Martin v. Champion Ins. Co, supra, in which this court found the uninsured insurer responsible for legal interest on the entire judgment. While the LeBlancs rely on Martin, both the LeBlancs and Farm Bureau agree that the facts of this case are distinguishable from Martin. We agree that Martin is distinguishable from the case sub judice.
In Martin, plaintiff sued for damages sustained in an automobile accident. Plaintiff also included State Farm, her UM insurer, in the suit.[7] Prior to trial, plaintiff settled with the tortfeasor and its insurer for the $10,000 policy limit, dismissing both from the suit. Plaintiff also accepted an unconditional tender from State Farm in the amount of $5,000. The case proceeded to trial against State Farm and the jury returned a verdict awarding plaintiff $170,600 for her injuries. The judgment rendered by the trial court ordered State Farm to pay judicial interest on the entire amount of the verdict, $170,000, from the date of judicial demand until the date of the unconditional tender and on $155,600 from the date of tender until paid.
The issue presented to this Court in Martin was whether the insurer was liable for interest on damages in excess of its $100,000 policy limit. In analyzing the main issue, the court noted that we would have to first determine whether the supplemental payment provision of State Farm's policy applied. Specifically, the court couched the issue as whether, in the absence of a valid written waiver, a supplemental payment provision contained in the liability portion of an automobile insurance policy applies to a UM claim. Martin v. Champion Ins. Co, 95-0030, p. 2, 656 So.2d at 994. As Ms. Martin had not executed a valid written waiver electing lower coverage, the court reasoned that La. R.S. 22:1406(d) required equal coverage for liability and UM claims. As to the issue of judicial interest, the State Farm supplemental payment provision stated that it would pay "interest on all damages owed by an insured as the result of a judgment." Martin v. Champion Ins. Co, 95-0030, p. 3, 656 So.2d at 994.
In the case sub judice, Mr. LeBlanc executed a valid written waiver electing lower limits as to his uninsured/underinsured coverage only. However, the waiver does not contain any language which would suggest that Mr. LeBlanc waived the application of the supplemental payment provision of the Farm Bureau policy, nor could the policy itself do so. See La. R.S. *93 13:4203. Moreover, Farm Bureau does not dispute its obligation to pay interest.
Application of a supplemental payment provision to a UM claim arises under La.R.S. 22:1406 and not by virtue of contract. Martin v. Champion Ins. Co, 95-0030, p. 4, 656 So.2d at 994. The fact that a provision would not, by its literal terms, apply to the UM claim is irrelevant. Id. When a supplemental payment provision requires payment of interest in a liability suit, La.R.S. 22:1406 requires that such interest also be paid in a suit by an insured under its UM coverage, unless specifically rejected. Id. To hold otherwise, would effectively reduce the benefits of coverage below the liability coverage in direct contravention of the express mandate of La.R.S. 22:1406. Id.
The Farm Bureau supplemental payment provision contains restrictive language not contained in the supplemental payment provision of State Farm's policy in Martin. Farm Bureau's policy provides that it will pay "all interest on any amount within the policy limits from the date of judicial demand until entry of judgment, and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon."
When the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. LSA-C.C. Art. 2046 (providing that when the words of a contract are clear, no further interpretation may be made to determine the parties' intent); Schroeder v. Bd. of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). The policy, when read as a whole, clearly provides that Farm Bureau will pay its policy limits together with all interest on "any amount within the policy limits."
Accordingly, we conclude that the clear and explicit terms of Farm Bureau's policy requires Farm Bureau to pay interest, pursuant to its supplemental payment provision, on its policy limit of $100,000 from the date of judicial demand until paid.

CONCLUSION
For the reasons set forth above, the judgment of the district court awarding Terry W. LeBlanc and Michelle S. LeBlanc $100,000 along with legal interest on that amount from the date of judicial demand until paid is reinstated.

DECREE
JUDGMENT OF THE COURT OF APPEAL REVERSED IN PART AND AFFIRMED IN PART. JUDGMENT OF THE TRIAL COURT REINSTATED.
VICTORY, J., concurs in the results and assigns reasons.
WEIMER, J., concurs with the result for the reasons assigned by VICTORY, J.
VICTORY, J., concurring.
I respectfully concur with the majority's result. The only issue presented in this case is whether Farm Bureau's supplemental payment provision provides for payment of interest on $1,144,344.63 (90% of the jury's verdict) or merely on the $100,000 uninsured motorist policy limit. There is no issue of whether such an insurer may legally limit interest to the policy amount and certainly no claim that Farm Bureau owes the entire $1,144,344.63. The majority's discussion of these matters, as if they are contested, is unnecessary.
The majority opinion fails to discuss the pertinent language of the supplemental payment provision in Farm Bureau's policy:

*94 "... and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon." (Emphasis added.)
The language relied on by the majority clearly governs interest from date of judicial demand until entry of judgment. Yet, as I appreciate it, plaintiffs claim that the remaining language of the supplemental payment provision, quoted above and governing the time period after entry of judgment, should be construed to require Farm Bureau to pay interest on $1,144,344.63. While I do not agree with this argument, the majority opinion fails to discuss it. In fact, the main reason the court of appeal rendered an opinion requiring Farm Bureau to pay interest on $1,144,344.63 is because the quoted language does not include the words "under the policy limits."
Further, footnote 2 of the majority opinion needs clarification. The interlocutory "judgment" of December 27, 2002 [not December 22, 2002], discussed in footnote 2 is really not a judgment at all, although it is labeled as such by the trial judge. It is, in fact, his reasons for ruling on plaintiffs' claim of interest on what the trial judge calls "excess judgment." This "judgment" of December 27, 2002, does not provide for interest from date of judicial demand on the entire judgment as the footnote indicates, but simply provides for interest on the "judgment" from date of judicial demand. Of course, no judgment even existed at that time, only a jury verdict.
In any event, the actual judgment in this case was signed on May 2, 2003 and did not cast judgment against anyone for $1,144,344.63. It stated the jury's verdict and rendered a judgment against Farm Bureau for $100,000, along with interest from date of judicial demand until paid. Because there is no judgment in the amount of $1,144,344.63 in existence, there is no basis for interest to run on that amount.
NOTES
[*] Retired Judge Philip C. Ciaccio, assigned as Justice Pro Tempore, sitting for Associate Justice Catherine D. Kimball.
[1] $1,144,344.63 of the verdict was attributable to Aysenne.
[2] An interlocutory judgment was signed by the trial court on December 22, 2002, stating that the LeBlancs were entitled to interest from Farm Bureau on the entire judgment from the date of judicial demand. However, the LeBlancs failed to raise the issue in the appellate court and that court deemed the issue abandoned pursuant to Uniform Rules-Courts of Appeal, Rule 2-12.4. As such, while the issue is not properly before this Court, we note that La.Code Civ. Proc. Arts. 1841 and 1915(B)(2) allows the trial court to modify a prior interlocutory judgment at any time prior to rendition of a final judgment on the merits.
[3] LeBlanc, et al v. Aysenne, et al, 05-0297 (La.4/29/05), 901 So.2d 1044.
[4] La. R.S. 22:680 prohibits insurance policies from being issued or delivered in the state of Louisiana without the imposition of uninsured/underinsured motorist coverage. However, the statute does allow an insured to elect limits of uninsured/underinsured coverage lower than the principle liability policy as long as the limits comply with the minimum liability limits required under La. R.S. 32:900. In the case sub judice, Mr. LeBlanc executed an "Uninsured/underinsured Motorist Bodily injury liability coverage selection form," which stated that he "select[s] uninsured/underinsured Motorist Bodily Injury coverage limits of 50/100 which are lower than my Bodily Injury Coverage limits."
[5] Due to an invalid UM form, Mr. LeBlancs' Farm Bureau policy had been reformed to provide UM coverage equal to the full policy limit of $100,000 per person.
[6] The LeBlancs dismissed Aysenne and her insurer on July 2, 2001, and further reserved their rights to recover judicial interest on the Aysenne/Handover/Massachusetts Bay obligation and all judicial interest from anyone other than the parties specifically dismissed.
[7] Plaintiff's UM policy limit was $100,000.