STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-524

GUY CHARLES PERRODIN, II

VERSUS

WESTERN WORLD INSURANCE COMPANY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. C-2021-10467
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

**Ortego, J. – Dissents, with written reasons.**

AFFIRMED.

M. Terrance Hoychick
M. Terrance Hoychick, A.P.L.C.
P. O. Drawer 391
Eunice, LA 70535-0391
(337) 457-9331
COUNSEL FOR PLAINTIFF/APPELLANT:
    Guy Charles Perrodin, II


John W. Waters, Jr.
Bienvenue, Foster, Ryan, & O'Bannon, LLC
1100 Poydras Street, Suite 2870
New Orleans, LA 70163
(504) 310-1500
COUNSEL FOR DEFENDANT/APPELLEE:
    Western World Insurance Company


Martin A. Stern
Leigh Ann Schell
Alexandra Roselli Lamb
Luke G. LaHaye
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139-4596
(504) 581-3234
COUNSEL FOR DEFENDANT/APPELLEE:
    Western World Insurance Company


Robert I. Siegel
Andre M. Boudreaux
Gieger, Laborde & Laperouse, L.L.C.
701 Poydras Street, Suite 4800
New Orleans, LA 70139
(504) 561-0400
COUNSEL FOR DEFENDANT/APPELLEE:
    Western World Insurance Company


Gabe A. Duhon
105 Tivoli Street
P. O. Box 478
Abbeville, LA 70511-0478
(337) 893-3423
COUNSEL FOR DEFENDANT/APPELLEE:
    Anthony James Stymest

**J. Stanford Vidrine**
**Vidrine & Associates**
**510 West Magnolia Street**
**Post Office Drawer 1019**
**Ville Platte, LA, 70586**
**(337) 363-2772**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Anthony James Stymest**

**KYZAR, Judge.**

Plaintiff, Guy Charles Perrodin, II, appeals the judgment of the trial court granting a motion for summary judgment in favor of Western World Insurance Company and dismissing his claims against it. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff bought a house and lot from Anthony James Stymest by an Act of Cash Sale on May 21, 2019, in Crowley, Louisiana. The house was constructed by Oak Alley Construction, LLC, a company owned by Stymest. The Act of Cash Sale indicated that it was a sale of a newly constructed home and was subject to the provisions of the New Home Warranty Act (NHWA), La.R.S. 9:3141. Shortly after moving in, Plaintiff noticed that the doors began sticking, nails were coming up from the floor, and cracks were appearing in the drywall. Plaintiff contacted Stymest regarding the issues he was experiencing with the new home. Stymest sent employees to inspect and correct the problems. The employees repaired the cracks in the drywall and adjusted one of the doors. Plaintiff was informed that the problems were due to high humidity and that there were not any foundation problems.

Unfortunately, the problems continued, and Plaintiff had the home inspected by two contractors who determined that the home had structural issues. When Stymest refused to correct the problems, Plaintiff filed suit against him, asserting that the house had major structural defects due to noncompliance with the building standards and/or defects in materials or workmanship not regulated by building standards. Plaintiff pled for all damages incurred as a result of the structural defects in the home as well as attorney fees. Plaintiff filed a First Supplemental and Amending Petition, adding Oak Alley Construction, LLC (Oak Alley), and its

commercial general liability (CGL) insurer, Western World Insurance Company (Western World).

Western World filed a motion for summary judgment, asserting that based on the "Damage To Your Work" and/or the "Damage To Your Product" exclusions contained in the CGL policy issued to Oak Alley, the policy did not provide coverage for Plaintiff's claims. The hearing on the motion for summary judgment was held on December 12, 2023. Following the hearing, the trial court granted summary judgment in favor of Western World, finding that both the "Damage To Your Product" and the "Damage To Your Work" exclusions applied to exclude coverage. It dismissed Plaintiff's claims against Western World with prejudice.

Although Plaintiff, Stymest, and Oak Alley all opposed the motion for summary judgment, only Plaintiff appealed the judgment. Plaintiff's sole assignment of error is that "[t]he trial court erred as a matter of law in granting the summary judgment motion based on the Defendant's policy exclusions."

## DISCUSSION

Plaintiff asserts that summary judgment was improperly granted by the trial court because it misinterpreted the policy exclusions within the insurance contract between Western World and Oak Alley.

Summary judgment is a procedural device used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgment de novo "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate[,]" i.e., "whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Wright v. La.*

2

*Power & Light*, 06-1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; La.Code Civ.P. art. 966(A)(3).

Typically, the interpretation of an insurance policy presents a question of law that can be properly resolved through a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Bernard v. Ellis*, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002.

In *Williams v. University of Louisiana Lafayette*, 19-753, pp. 3–4 (La.App. 3 Cir. 4/22/20), 297 So.3d 1045, 1048–49, *writ denied*, 20-1008 (La. 11/4/20), 303 So.3d 641 (first alteration ours), this court laid out the rules pertaining to contract interpretation:

> "The interpretation of an insurance policy is normally a question of law." *Armenia Coffee Corp. v. Am. Nat'l Fire Ins. Co.*, 06-409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253, *writ denied*, 06-2983 (La. 2/16/07), 949 So.2d 422. Questions of law are reviewed de novo "without deference to the legal conclusions of the courts below." *Durio v. Horace Mann Ins. Co.*, 11-84, p. 14 (La. 10/25/11), 74 So.3d 1159, 1168. As to questions of law, "the standard of review of an appellate court is simply whether the court's interpretive decision is legally correct." *Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C.*, 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474 (citing *Glass v. Alton Ochsner Med Found.*, 02-412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, *writs denied*, 02-2977, 02-3018 (La. 3/14/03)[,] 839 So.2d 36, 37). "[I]f the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Id.* (citing *Pelleteri v. Caspian Group Inc.*, 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230).
>
> "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "The parties' intent as

3

reflected by the words in the policy determine the extent of coverage." *La. Ins. Guar. Assn v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 763. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. The words are "given their generally prevailing meaning." La. C.C. art. 2047. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. C.C. art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. C.C. art. 2049.

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *La. Ins. Guar. Ass'n*, 93-0911, 630 So.2d at 763.

*Spencer v. Chevron Corp.*, 16-174, pp. 6-7 (La.App. 4 Cir. 9/28/16), 202 So.3d 1055, 1058-59 (alteration in original).

In *Ledbetter v. Concord General Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La. 4/18/96), 671 So.2d 915, the supreme court stated:

Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 72 (1939).

We note at the outset that when coverage is sought to be excluded under a policy of insurance, only one exclusion is necessary to exclude coverage. *McMath Const. Co., Inc. v. Dupuy*, 03-1413 (La.App. 1 Cir. 11/17/04), 897 So.2d 677, *writ denied*, 04-3085 (La. 2/18/05), 896 So.2d 40. "[I]t is not necessary for every

4

exclusion to apply in order to find the policy does not provide coverage." *Id.* at 683. Western World argues that multiple exclusions apply in this case, while Plaintiff asserts otherwise. For completeness, we will address the applicable exclusions in full.

The CGL policy issued by Western World to Oak Alley provides that Western World "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy also provides that "various provisions in this policy restrict coverage."

The CGL policy exclusions that restrict coverage include the following:

(2) This Insurance does not apply to:

. . . .

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[1]

The policy further defines "Property damage" as:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[1] The CGL policy had an endorsement which deleted the exemption from the exclusion for subcontractors.

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Your product" is defined within the policy as:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

The "Your product" definition goes on to include:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

"Your work" is defined as:

(1) Work or operations performed by you on your behalf; and

(2) Materials, parts or equipment furnished in connection with such works or operations.

The "Your work" definition further includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

The CGL policy provides that "Products-completed operations hazard" includes all "property damage" occurring away from the premises owned or rented by the insured and arising out of "your product" or "your work," except for "[w]ork

that has not yet been completed or abandoned." It further provides that "your work" is deemed to be completed at the earliest of the following times:

> (a) When all of the work called for in your contract has been completed.
>
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Initially, Plaintiff asserts that the home is not a product, but real property, and therefore, it cannot be excluded by the "Your Product" exclusion. Plaintiff points out that the definition of "Your Product" in the policy excludes "real property," and since the home would be considered "real property," it cannot be a product.

This issue was addressed by the court in *Atain Specialty Insurance Co. v. VIG II, LLC*, CV 15-6499, 2017 WL 3867672 (E.D. La. Feb. 9, 2017). *Atain* involved a similar situation to the case sub judice, where the plaintiffs purchased a home from the contractor, who designed and built the home. After moving into the new home, the plaintiffs discovered several new defects in the construction of the home. In their petition, the plaintiffs pled that pursuant to the NHWA, "they [were] entitled to recover from VIG II 'the cost of repairing the damage to the home and remedying the defects in the home[.]'" *Id.* at *1. The defendant, the commercial general liability insurer, had issued a policy to the contractor that contained the same "Damage To Your Product" and "Damage To Your Work" exclusions and definitions as Western World's policy.

7

The defendant filed a motion for summary judgment asserting that its policy's "Damage to Your Product" exclusion excluded the plaintiffs' claims. The court initially noted its surprise in the defendant's rejection of the "work product" exclusion as that exclusion would eliminate coverage for the cost of repairing or replacing the insured's own defective work or product, i.e. the home. Moving on to the "Damage To Your Product" exclusion, the court noted that the contractor sold the home to the plaintiffs, that the entire home was the contractor's product, and the "Damage to Your Product" exclusion "encompasses damage to the insured's product itself." *Id.* at *6. In addressing the issue that the defendant's policy definition of "Your Product" excluded real property, the court stated:

> A final concern is that the CGL policies' definition of "Your Product" excludes real property. "Under Louisiana law, 'immovable property' is real property." *In re Hari Aum, LLC*, 714 F.3d 274, 283 n.7 (5th Cir. 2013); *see also* La. Stat. Ann. § 10:9-102 (defining "[r]eal property" as "immovable property and real rights therein...."); 24 Diane Tooley–Knoblett & David Gruning, Louisiana Civil Law Treatise, Sales § 6:5 (2016) ("Louisiana, like other civil law systems, divides things into movables and immovables, categories that correspond generally to personal property and real property in common law jurisdictions."). By Louisiana statute, "[t]racts of land, with their component parts, are immovables." La. Civ. Code art. 462. Buildings and "other constructions permanently attached to the ground" are component parts. La. Civ. Code. art. 463; *see also Lasyone v. Emerson*, 57 So. 2d 906, 909 (La. 1952) ("Under our law, buildings or other structures, being immovable by nature, become a part of the land."). Accordingly, because both the house and land that VIG II sold to the Zoglios are immovable under Louisiana law, they would seem to fall under the real property exception to the "Your Product" definition. Were this true, the Damage To Your Product section would not apply to preclude coverage.
>
> Louisiana courts apparently do not treat products such as the Zoglios' home as real property for purposes of the Damage To Your Product exclusion. Rather, when an insured contracts to provide building services that result in the construction of what becomes an immovable—such as a home or a concrete slab—the Damage To Your Product exclusion still applies. *See Supreme Servs.* [& *Specialty Co. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634], 958 So.2d at 642 (concrete slabs were "product"); *Provost* [*v. Homes by*

8

*Lawerence & Pauline, Inc.*, 12-761 (La.App. 3 Cir. 12/5/12), 103 So.3d 1280, *writ denied*, 13-49 (La. 2/22/13), 108 So.3d 776] 103 So. 3d at 1285 (La. App. 3 Cir. 2012) (home was "product").

> Because the Zoglios' home is VIG II's product, and the complaint evidences no claims for damage to anything other than the house itself, the Damage To Your Product exclusion unambiguously precludes coverage for the Zoglios' claims. Atain therefore has no duty to defend VIG II against the Zoglios' allegations.

*Id.* at *7–8 (alterations in original).

In *McMath*, 897 So.2d at 683 (alterations in original), the court rejected the argument that the "Your product" exclusion was inapplicable because the product was incorporated into real property, stating:

> However, McMath makes two arguments concerning these exceptions. "Your product" is defined as "goods or products, other than real property . . . sold [, or] handled" by the insured. McMath argues that because Dupuy's materials became incorporated into real property, the "product" exclusion is inapplicable. We reject this argument, because the clear import of the exception is to remove only real property itself from the definition of "your product." Had the exception meant to remove materials incorporated into real property from the definition of "your product," it would have said so. The jurisprudence has addressed many instances in which the "product" involved was incorporated into real property and has never interpreted this provision as expansively as McMath suggests; nor will this court do so. Under the plain meaning of Exclusion K, it is applicable to this case and eliminates coverage for the claimed property damage.

We agree with the courts' rationale in *Atain* and *McMath* and find it compelling. Therefore, Plaintiff's assertion that the "Your Product" exclusion does not apply because the house was real property is without merit.[2]

Plaintiff next asserts that the CGL policy does not exclude coverage based on the "Work product" exclusion contained in its policy. In *Supreme Servs.*, 958 So.2d 634, the supreme court dealt with a claim by a property owner against the contractor

---

[2] *See also, Opelousas Hotel Grp. LLC v. DDG Constr. Inc.*, 648 F.Supp.3d 757 (W.D. La. 2022), where the court held that the "Damage To Your Product" exclusion in the policy excluded damages arising out of the cost of repairs for the defective construction of a hotel.

for defects in the design and construction of a concrete slab by the contractor's subcontractors. A third-party claim was brought by the contractor against its CGL insurer, asserting coverage under its policy. The insurer filed a motion for summary judgment asserting the "work product" exclusion in the policy excluded coverage for improper construction by the insured or any of its subcontractors. The trial court granted the insurer's motion; however, this court reversed finding that the "work product" exclusion was inapplicable to the work performed by the subcontractor. The "Your work"[3] and "Products-completed operations hazard" definitions were essentially the same as that in Western World's policy. Initially, the supreme court explained the law regarding the construction of insurance contracts, by stating:

> An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. LSA–C.C. art. 1983. An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. *Reynolds* [*v. Select*, 93-1480 (La. 4/11/94,] at 634 So.2d [1180] at 1183; LSA–C.C. arts. 2045–2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. *Reynolds, supra*; *Newby v. Jefferson Parish Sch. Bd.*, 99-0098 (La.App. 5 Cir.6/1/99), 738 So.2d 93.

> Liability insurance policies should be interpreted to effect, rather than to deny coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La.1993). However, it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds. *Reynolds*, 634 So.2d at 1183; *Livingston Parish School Board v. Fireman's Fund American Insurance Company*, 282 So.2d 478 (La.1973); *Oceanonics, Inc. v. Petroleum Distributing Company*, 292 So.2d 190 (La.1974). In

---

[3] The plaintiff's CGL policy, as did Western World's policy, provided that the exclusion for "Property damage" to "your work" arising out of it or any part of it, including the "products-completed operations hazard, did not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. However, unlike the plaintiff's policy, Western World's policy had an endorsement which deleted the exception from the exclusion for subcontractors.

these circumstances, unambiguous provisions limiting liability must be given effect. *Jones v. MFA Mutual Insurance Company*, 398 So.2d 10 (La.App. 3 Cir.1981); *Snell v.* Stein, 261 La. 358, 259 So.2d 876 (La.1972); *Niles v. American Bankers Insurance Company*, 258 So.2d 705 (La.App. 3 Cir.1972). With that stated, we note that the insurer bears the burden of proving that a loss falls within a policy exclusion. *Blackburn v. National Union Fire Ins. Co.*, 00-2668 (La.4/3/01), 784 So.2d 637, 641.

*Id.* at 638–39.

In reversing this court and holding that the trial court correctly ruled that the

CGL policy excluded coverage for the plaintiff's claims, the supreme court stated:

> Professors McKenzie and Johnson define both the "work product" exclusion and the "PCOH"[4] provision. See, § 186, pp. 512–521 and § 195, at pp. 554–562 in 15 La. Civil Law Treatise (3d ed.2006). The "work product" exclusion reflects the insurance company's intent to "avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship." A CGL policy is not written to guarantee the quality of the insured's work or product. *McMath Const. Co., Inc. v. Dupuy*, 03–1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 682, *writ denied*, 04–3085 (La.2/18/05), 896 So.2d 40. They also explain that exclusions (2)(j)(5) and (6) apply while the insured's work is in process, i.e., the work is not yet completed. These exclusions apply to any property that must be restored, repaired, or replaced because of the insured's or the subcontractor's faulty workmanship; however, exclusion (j)(6) does not apply to property damages in the PCOH. On the other hand, the PCOH provision, which is outlined in exclusions (2)(k) and (*l*), applies only to property within that hazard after the work is completed. These provisions apply only to the contractor's work and not to subcontractors. McKenzie, at pp. 561–62.

> In reviewing the policy, we note that "work" is defined as those operations performed by Greer (the contractor) and/or the subcontractors, who performed on behalf of Greer. Here, the "work," in question, includes all the work associated with laying the concrete slab performed by Greer and its subcontractors. We find that a reading of the exclusionary language in this liability policy makes it clear that damage to the product itself (the concrete slabs) is excluded from coverage.

> In *Vintage* [*Contracting, L.L.C. v. Dixie Building Materials Co., Inc.*, 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22], the court of appeal

---

[4] Products-completed operations hazard.

specifically held that CGL coverage is excluded when the contractor is required to replace a subcontractor's concrete slab, and damages claimed were consequences of the alleged defective workmanship. The court of appeal also held that the PCOH provision excluded coverage when the contractor's work was not completed when the slab was replaced.

We find that the exclusionary clauses in *Vintage* are parallel to the provisions in AXA's CGL policy. Similarly, we find that AXA's CGL policy clearly excludes coverage for the damage to the property on which Greer, and/or its subcontractor, worked. Furthermore, the CGL policy excludes coverage to property (concrete slab) that must be repaired or replaced because the work performed by Greer, or on its behalf, was incorrectly performed. Thus, we find that the court of appeal erred in concluding that the CGL provided coverage for the work performed, and that the "work product" exclusion was inapplicable.

*Id.* at 641–42 (alterations added).

In *BG Real Estate Services, Inc. v. Rhino Systems of Canada, Inc.*, 11-163 (La.App. 5 Cir. 11/15/11), 78 So.3d 285, *writ denied*, 11-2761 (La. 2/17/12), 82 So.3d 289, a building owner brought suit against a roofing contractor and the contractor's CGL insurer for replacement costs following the faulty installation of a roof. The contractor also provided a warranty for its work. The trial court found that the CGL policy excluded coverage for the plaintiff's claims under its "work product" exclusion. The fifth circuit, in affirming the trial court, stated:

The only remaining exclusion under which Scottsdale could deny coverage is the "work-product" exclusion—exclusion (*l*). This exclusion applies to work performed by Grand Point. The "work" in this case includes all work associated with installing the roof. The Scottsdale policy makes it clear that damage to the product itself is excluded from coverage. BG Real Estate relies on the exception to the exclusion which provides coverage for work performed by a subcontractor.

We have thoroughly reviewed the record and are unable to find any evidence that suggests that Rhino Systems was Grand Point's subcontractor. Therefore, the exception to exclusion (*l*) is inapplicable.

. . . .

12

For the reasons discussed, we find that BG Real Estate's claims for replacement costs of the roofs are excluded under the Scottsdale policy. The damage arose after the work was completed and therefore triggers the "work-product" exclusion. This exclusion excludes damage to work performed by Grand Point. Accordingly, the judgment is affirmed.

*Id.* at 290.

The policy exclusions in the *Supreme Services* CGL policy were almost identical to those in Western World's policy, and Plaintiff has only asserted claims for damages due to Oak Alley's defective workmanship in building the house. Therefore, we find that the CGL policy excludes coverage for Plaintiff's claims in this matter. The "Damage to Your Product" exclusion would apply because the home is the "product." The "Damage to Your Work" exclusion also applies as the "work" was the construction of the home. The "work" was included in the "products-completed operation hazard" because the home construction had been completed when the defects first materialized.

Finally, Plaintiff asserts that the NHWA,[5] La.R.S. 9:3141, is applicable to this sale and would impose coverage under the CGL policy. Louisiana Revised Statutes 9:3141 provides:

> The legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of homeowners' insurance as additional protection for the

---

[5] Plaintiff further asserts that the claim under the NHWA is "a matter of contract" and that the Policy's exclusion for "Contractual Liability" (Exclusion "b") does not apply because Oak Alley did not assume this liability in a contract or agreement. This exclusion provides that coverage does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Much like Plaintiff's assertion that exclusion "j" of the policy did not apply, Western World did not assert either exclusion "b" or "j," therefore, we will not address these assertions.

public against defects in the construction of new homes. This need can be met by providing a warranty for a new home purchaser defining the responsibility of the builder to that purchaser and subsequent purchasers during the warranty periods provided herein. The warranty, which is mandatory in most cases, shall apply whether or not building code regulations are in effect in the location of the structure, thereby promoting uniformity of defined building standards. Additionally, all provisions of this Chapter shall apply to any defect although there is no building standard directly regulating the defective workmanship or materials.

*Provost*, 103 So.3d 1280, involved a suit by the plaintiffs for the defective construction of their home by the defendant. The defendant made demand on their CGL insurer to defend it. The insurer ultimately filed a motion for summary judgment, asserting that its policy exclusions negated coverage under both the "Damage to Your Work" and "Damage to Your Product" exclusions. The trial court applied the "Damage to Your Product" exclusion and found that there was no coverage for the damage to the home, noting that there is no subcontractor exception to the "Damage to Your Product" exclusion. Also, the "Products-completed operations hazard" exclusion did not apply because the entire house was the product of the defendant. Regarding the plaintiffs' assertion that their claims were governed by the NHWA, which would not be excluded by the CGL policy, this court stated:

> Pointing to the NHWA, they argue the exclusion is in dereliction of public policy. We do not agree. The stated purpose of the NHWA is "to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of *homeowners' insurance* as additional protection for the public against defects in the construction of new homes." La.R.S. 9:3141 (emphasis added). This stated purpose shows the legislature sought to provide homeowners additional protection through homeowners' insurance,[6] not CGL insurance, as argued by the Provosts. Moreover, Louisiana jurisprudence holds that CGL policies are "not written to guarantee the quality of the insured's work or product." *Supreme Servs.*, 958 So.2d at 641. Accordingly, the

---

[6] In *Atain*, 15-6499, the plaintiffs also filed a claim for the defective construction of their new home against their homeowner insurer, who paid at least $107,851.30 pursuant to their claim.

14

Provosts have not shown their claims are not subject to AVIC's breach of contract exclusion.

*Id.* at 1283 (alteration added).

*Thorn v. Caskey,* 32,310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653, involved a claim by the purchasers against the builder and his CGL insurer after the builder failed to complete construction of a home, alleging a breach of contract claim and a claim under NHWA. The trial court dismissed the claims against the insurer. In affirming the dismissal, the supreme court stated:

> In *Allen v. Lawton and Moore Builders, Inc.,* 535 So.2d 779 (La.App. 2d Cir.1988), we addressed this very issue. In *Allen,* we held that a similar exclusion in a general liability policy, also issued by Ohio Casualty, negated coverage for construction defects in the home built by the insured. Under almost identical facts, we stated:
>
>> Plaintiffs' claims against the defendants for which insurance coverage is asserted are for defects in the construction of the house and lot constructed by the defendant-insured, J.R. Moore, Inc. The house and lot are the contractor's work or work product. Plaintiffs do not allege that any damage was caused to any other property. The exclusion clearly excludes coverage for property damage to the named insured's products, the house and lot, and for property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, the work in this case being the construction of the house and lot. The damages claimed and relief sought by plaintiffs are all consequences of the alleged defective workmanship and defects in the work performed by the insured, for which the policy provides no coverage.
>
> Ohio Casualty argues that this type of policy was not intended to insure the quality of the builder's work, that there are other types of insurance policies available for such coverage and that the work-product exclusion was drafted to prevent just this situation. We agree.
>
> First, there is an abundance of jurisprudence interpreting and explaining the work-product exclusion. A general liability policy with a work-product exclusion clause has uniformly been held not to insure any obligation of the policyholder to repair or replace his own defective work or defective product. See *Allen, supra; Lewis v. Easley,* (La.App.

2d Cir.1993), 614 So.2d 780; *Vobill, supra*, n. 10; *Swarts v. Woodlawn, Inc.*, (La.App. 1st Cir.1992), 610 So.2d 888; *Korossy, supra.* These exclusions plainly indicate that the policy is not intended as a guarantee of the quality of the insured's products or work. Louisiana jurisprudence has consistently recognized that liability policies are not performance bonds. *Allen, supra; Magill v. Owen Construction Co., Inc.*, 434 So.2d 520 (La.App. 2d Cir.1983); *Breaux v. St. Paul Fire & Marine Ins. Co.*, 345 So.2d 204 (La.App. 3d Cir.1977). The defects for which recovery is sought, in the case *sub judice*, fall squarely within the risk specifically excluded from coverage by the exclusions (k) and (*l*) of the policy. Consequently, we hold that the Ohio Casualty policy does not provide coverage for damages suffered by the Thorns as a result of defects in the house which were a result of Caskey's faulty workmanship.

*Id.* at 665–66 (footnoted omitted).

As did the CGL policy in *Thorn*, the definitions in Western World's CGL policy for both "Your product" and "Your work" includes, "Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'" or "your work[.]" Therefore, the exclusion for "Your product" and "Your work" would include any associated warranties. As such, this argument is without merit.

Accordingly, we find that both the "Damage to Your Work" and "Damage to Your Product" exclusions are applicable in this matter and exclude coverage under Western World's CGL policy.

## DECREE

For the forgoing reasons, the judgment of the trial court granting the motion for summary judgment in favor of Western World Insurance Company, dismissing the claims of Guy Charles Perrodin, II with prejudice, is affirmed. Cost of this appeal are assessed to Guy Charles Perrodin, II.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

24-524

GUY CHARLES PERRODIN, II

VERSUS

WESTERN WORLD INS. CO., ET AL.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**ORTEGO, J., dissents and assigns written reasons**.

I respectfully dissent as to the majority's opinion affirming the trial court's granting a motion for summary judgment in favor of Western World Insurance Company ("Western") and dismissing Plaintiff, Guy Charles Perrodin, II's ("Perrodin") claim against Western World Insurance Company.

I agree with the majority that, generally, a CGL policy, such as Western's policy, and specifically the exclusion(s) for "Your product" and "Your work" would generally exclude coverage for most poor workmanship and defective construction claims as to the parties to this insurance contract. However, as an appellate court, our review of each case is as to the specific set of facts and evidence presented, along with the underlying and unique relationship that existed between the parties at that time.

As this court is aware, the entire policy **_and_** exclusions must be considered in making a determination whether coverage applies. _LeBlanc v. Aysenne,_ 205-297 (La. 1/19/06), 921 So.2d 85; _Peterson v. Schimek,_ 98-1712 (La. 3/2/99), 729 So.2d 1024; _Louisiana Insurance Guaranty Association v. Interstate Fire & Cas. Co.,_ 630 So.2d 759 (La. 1994).

Additionally, this court has previously acknowledged that if there are mixed question of fact and law, such as in this coverage issue, it is for the trier of fact, in

this case, the judge or jury, to decide. *Sonnier v. Diversified Health Care, Inc.*, 22-420 (La.App. 3 Cir. 4/14/22), 364 So. 3d 1213.

The trial court, along with the majority of this panel, considered the "Your Product" -Exclusion L and the "Your Work"- Exclusion K, standing alone, in denial of coverage and dismissal of plaintiff's claims, yet apparently did not consider those exclusions in connection with Exclusion J of this CGL policy.

The CGL policy Exclusion J, in pertinent part, includes the following (emphasis added):

J. Damage Property

"Property damage" to:

. . . .

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

. . . .

"Paragraph (2) of this exclusion ***does not*** apply if the premises are "your work" and were never occupied, rented or held for rental by you."

Here, the affidavit of Oak Alley's owner states and confirms that neither he, individually, nor Oak Ally ever occupied, rented or held the property for rental purposes. The undisputed evidence further shows that the sale of these premises was a transaction only between Stymest and Perrodin, and there was no contract between the plaintiff and defendants to have this house built. Additionally, the only parties to this CGL policy were Western and Oak Alley, as neither Stymest nor Perrodin were parties thereto. Thus, showing there exists a mixed question of fact and law as to the issue of coverage, which is for the trier of fact to determine.

Finally, a review of the record shows that both parties submitted contradictory evidence to support their respective positions at the hearing as to this coverage issue, and specifically as to the issue of whether the property/premises sold truly "fits" within the policy's definition(s) of "Property Damage," "Your Product," and the "Your Work," and as to the issue of Plaintiff's claims being excluded by the exclusions K and L. Thus, the trial court reviewed and erroneously weighed the contradictory evidence presented by the parties, found in favor of the Defendants' evidence and granted their motion for summary judgment. However, it is still the law that a motion for summary judgment is not a substitute for a trial on the merits and the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764.

In dissenting, this writer is not attempting to make any statement as to the merits of this matter. Quite simply, at this stage of litigation, the unique and specific facts of this case are such that I would find that there does exist genuine issues of material fact which, by law, precludes the granting of summary judgment. Therefore, I would reverse the trial court and remand this matter for a full trial on the merits.

GJO